527 So.2d 401 (1988)
STATE of Louisiana
v.
Brian DIXON.
No. 88-K 0518.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1988.
Harry F. Connick, Dist. Atty., Graham dePonte, Asst. Dist. Atty., Adrienne LaCour, Asst. Dist. Atty., New Orleans, for relator.
Ike Spears, New Orleans, for respondent.
*402 Before BYRNES, CIACCIO and PLOTKIN, JJ.
CIACCIO, Judge.
On application by the State we granted certiorari to review a district court judgment suppressing defendant's confession. Finding that none of defendant's rights were violated and that he gave his confession freely, voluntarily, knowingly and intelligently, we hold that the district judge erred. We reverse.
On June 29, 1987, police were summoned to a residence where a sixteen-months old child had died. Members of the Police Department's Child Abuse Section were among the officers investigating the incident. Detective Stephen Kopacz testified at the hearing on defendant's motion to suppress.
Detective Kopacz testified that the initial investigation of the scene revealed no evidence of criminal activity. Questioning both defendant and the child's mother the police learned the following: On the evening of June 28, defendant was babysitting the child while her mother was visiting some friends. The child's mother had fed her before leaving, and the defendant had later bathed her and put her to bed. When put to bed the child had been breathing heavy and later had awakened and cried, but defendant attributed these as symptoms of a congenital heart ailment, a physical condition of the child confirmed by her mother. The next morning when the child's mother attempted to awaken her she discovered that the child was dead. She presumed the child had died from her heart problem.
The child's body was taken to the coroner's office. The body exhibited no visible signs of injury or abuse. At this time the police had no suspicions of criminality, and awaited the coroner's report on cause of death.
The coroner verbally reported to Detective Kopacz that the autopsy revealed that the child's heart abnormality had healed and was not the cause of her death. She died due to a laceration of her liver bleeding into her stomach causing asphyxiation. Detective Kopacz sent for defendant and the child's mother to come to his office to be interviewed further; still, they were not considered suspects and were not in custody.
During this interview defendant and the child's mother reiterated the accounts, with some more detail, they had given at the scene. No apparent cause for the child's injury was revealed.
Also during this interview, a lawyer, sent by defendant's mother, arrived at the police station to inquire as to why defendant had been called for the interview. The testimony is conflicting concerning whether this lawyer was acting in a professional representative capacity or simply as a friend of the family gathering information. In either case, the interview was concluded and this lawyer gave defendant and the child's mother a ride home.
The coroner's office had informed the detectives that there was food in the child's stomach which indicated that she had died within three hours of having eaten that food. The detectives had questioned the child's mother about what she had fed the child before leaving her with defendant. Assuming that defendant and the child's mother had been truthful, the detectives concluded that the apparent time of death placed the child in the sole custody of defendant when she received the injury which caused her death.
After some consideration of the apparent facts on hand and a discussion with another Child Abuse detective, the detectives again sent for defendant and the child's mother to be interviewed. At this interview the child's mother expressed complete confidence that defendant would not have done anything to hurt the child. Defendant, however, admitted that upon becoming aggravated with the child's behavior he had punched her once in the stomach.
Because the apparent time of death had aroused their suspicions, the detectives had advised defendant of his Miranda rights prior to this last interview. After waiving his rights defendant had admitted to hitting the child. He then agreed to give a *403 recorded statement, which statement was later transcribed. Before giving this statement he was advised again of his rights, and he signed a rights form indicating that he understood his rights and waived them.
Defendant moved the district court to suppress this confession. Defendant contends that the attorney who had earlier come to police headquarters had been acting in a professional representative capacity and had informed the detectives that he did not want defendant questioned further. He argues, therefore, that the failure of police to notify this attorney prior to the last interview violated defendant's right to remain silent and his right to counsel.
Nothing in the record indicates that defendant did not freely and voluntarily waive his rights or that he did not know and understand those rights and the consequences of his waiver. And he does not argue this. Defendant argues only that the police should not have questioned him without first contacting his attorney.
Accepting the apparent trial court finding that the attorney who came to police headquarters was acting in a professional representative capacity and had so informed the police, defendant is, nevertheless, the one to invoke his right to remain silent or to have counsel present during questioning. Defendant knew the attorney had come to police headquarters; the attorney gave defendant a ride home. Defendant, however, never indicated that he wanted to have the attorney present. He was informed that he had a right to have an attorney present, and he waived that right. Further, during the recorded statement defendant was asked about this attorney. He said that he had not called him, that he guessed his mother called him, and, "he's my baseball coach." Defendant apparently was not interested in having this attorney present.
We find no police misconduct violative of any of defendant's rights which warrants suppressing his confession. See Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). "The ... Miranda warnings are `not themselves rights protected by the Constitution but [are] instead measures to insure that the [suspect's] right against compulsory self-incrimination is protected.'" New York v. Quarles, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), quoting Michigan v. Tucker, 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed. 2d 182 (1974). Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew that he could stand mute and request a lawyer, and that he was aware of the state's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law. Moran v. Burbine, supra, at 106 S.Ct. 1142.
The record establishes that defendant made his confession freely, voluntarily, knowingly and intelligently. The trial court erred by suppressing the confession. We, therefore, reverse the trial court ruling and deny defendant's motion to suppress. We remand this matter for further proceedings.
REVERSED AND REMANDED.