974 So.2d 698 (2007)
STATE of Louisiana
v.
Ezekiel D. TOUSSAINT.
No. 07-KA-353.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 2007.
Paul D. Connick, Jr., District Attorney, Parish of Jefferson, Terry M. Boudreaux, Laura Schneidau, Anne Wallis, Assistant District Attorneys, Gretna, LA, for plaintiff/appellee.
James A. Williams, Attorney at Law, Gretna, LA, for defendant/appellant.
Panel composed of Judges SUSAN M. CHEHARDY, CLARENCE E. McMANUS, and GREG G. GUIDRY.
GREG G. GUIDRY, Judge.
Defendant, Ezekiel D. Toussaint, appeals from his conviction for armed robbery with a firearm and his sentence to 35 years at hard labor, without benefit of parole, probation or suspension of sentence. For the reasons which follow, we affirm.
On April 7, 2005, the Jefferson Parish District Attorney's Office filed a bill of *699 information charging the Defendant with armed robbery using a firearm, a violation of La. R.S. 14:64 and La. R.S. 14:64.3. The Defendant pled not guilty at his arraignment. Subsequently, the Defendant filed a Motion to Suppress Confession, Identification, and Physical Evidence. The De fendant withdrew his motions to suppress the physical evidence and confession. The trial judge denied the motion to suppress the identification. On March 21, 2006, the Defendant filed a motion in limine, which the trial court granted.[1] The case proceeded to trial.
At trial, the assistant general manager of the Jiffy Lube that was robbed, Shelva Davis, testified he was at the store, located at 405 Wall Boulevard, on the date of the armed robbery, March 26, 2004. He was in the office when the Defendant walked in and asked if they were hiring at the store. The Defendant walked toward Davis and gestured with his finger over his lips for Davis to remain quiet. Davis noticed immediately that the Defendant had a gun in his right hand. The Defendant pointed the gun in Davis' face during the robbery. Davis threw the bank deposit bag from the previous day on the counter. The Defendant counted the money. The bag contained checks and approximately $243 in cash. The Defendant told Davis that he knew he had more money. Davis replied that there was no more money because they had just opened the store at 8:00 a.m. The Defendant exited the store. The robbery took a total of four to five minutes. After the Defendant left, Davis called 911.
Another Jiffy Lube employee at work on the day of the armed robbery, James Lamargue, testified that prior to the robbery he saw a gold/tan Ford Explorer with two occupants pass the store. As they passed, both occupants looked into the store. Later, he saw two men approaching the store. The Defendant asked Lamarque where he could find the manager. Lamarque then talked to the other man, later identified as Freddie Beverly, for approximately one minute. During that time, Lamarque asked Beverly whether he was in the gold Explorer that drove past earlier. Beverly eventually responded, "yeah," and told Lamarque that it was his cousin's truck. After Beverly's response, Lamarque became suspicious and went into the store's lobby. Lamarque could hear the Defendant tearing open the bag containing the money. As soon as Lamarque saw the gun in the Defendant's right hand, he left and went to the gas station next door. Beverly was no longer in front of the store when Lamarque left. Lamarque asked an employee of the gas station to call the police. Lamarque went back outside after Davis told him that the robbers had left.
When Lamarque went back to the Jiffy Lube store, Davis was on the phone with the police. Davis described the Defendant as six feet tall with a slim body-type. He stated that the Defendant wore a hooded fleece pullover with red markings on the front, possibly for a sports team, and a black baseball cap with a logo on it. Davis testified that because the Defendant's hands were right in front of his face, he observed during the robbery that the Defendant had darker than normal fingernails. 'The Defendant wore nothing to hide his face except a pair of sunglasses with a yellowish tint. Davis also observed that the Defendant had a thin moustache. During the robbery, Davis saw Beverly *700 talking to Lamarque. Beverly was wearing a grey hooded sweater. Beverly never came into the office.
Lamarque talked to the police during the same telephone conversation as Davis. Lamarque told the police that the two men were driving in a tan or gold-colored late model Ford Explorer. Lamarque described the Defendant as wearing yellow sunglasses and a black jacket and baseball cap. Both the jacket and the cap had white lettering on them. Lamarque described Beverly as wearing a grey sweat-shirt and small sunglasses.
Officer Dave Jackson of the Jefferson Parish Sheriffs Office testified that, after being notified of the armed robbery, he followed a gold Ford Explorer that fit the description of the one involved in the armed robbery. The vehicle increased speed shortly after he began following it. Three black males were in the vehicle. Officer Jackson put on his lights and sirens to warn the occupants to pull the vehicle over. However, the occupants of the vehicle ignored him and failed to stop for two stop signs. As he continued to follow, Officer Jackson saw the occupants of the Explorer taking off their shirts. Officer Jackson opined that the occupants did this to change their appearances. During the pursuit, the vehicle slowed and both passengers from the front and back seats jumped out from the vehicle's right side. Eventually the vehicle stopped next to an apartment building. Beverly, the driver, got out and ran between the buildings of the apartment complex. He was apprehended 10 or 15 minutes later approximately 200 feet from where he abandoned the Explorer, at 1900 Faith Place.
The police took Lamarque to a location to identify the vehicle approximately 20 or 30 minutes after the robbery. Lamarque identified Beverly and the vehicle. He had no doubt about his identification of the vehicle and Beverly, even though Beverly was not wearing the sweatshirt and glasses he had worn when at Jiffy Lube earlier.
Davis was taken by patrol car to an apartment complex near Terry Parkway approximately 30 to 35 minutes after the robbery. Davis saw a gold Ford Explorer and someone in handcuffs. Davis told the police that he could not be sure that Beverly was the person who had been outside talking to Lamarque. However, he did recognize the grey sweater on the front seat of the Explorer as the one worn by Beverly.
Detective Keith Locascio of the Jefferson Parish Sheriffs Office's Robbery Squad testified that, after the police apprehended Beverly in connection with the armed robbery, Beverly signed a consent form allowing the police to search the Explorer. Two baseball caps were found in a search of the vehicle. Detective Locascio testified that during the course of his investigation he developed the name of Ezekiel Toussaint, the Defendant. They performed computer checks and then a photographic lineup was compiled with the Defendant's photograph.[2]
Within approximately six hours of the armed robbery, Detective Mascaro returned to the Jiffy Lube with the photographic lineup. Davis identified the Defendant in the photographic lineup as the man who came into the office, pointed the gun in his face, and robbed him. Davis was positive in his identification. There was no doubt in his mind. Davis also identified the Defendant in court as the man who robbed him. Detective Mascaro testified that he did not inform Davis that the photographic lineup included a suspect.
*701 After Defendant was positively identified in the photographic lineup, an arrest warrant was issued for him. Defendant was arrested, charged and tried.
After a two-day jury trial, the Defendant was found guilty as charged. The Defendant filed a motion for new trial, which the trial court denied. According to the commitment, the trial judge sentenced the defendant to 35 years at hard labor without benefit of parole, probation, or suspension of sentence.[3] Defendant filed a motion to reconsider sentence, which the trial court denied. Defendant takes this timely appeal.
ASSIGNMENT OF ERROR NUMBER ONE
In his only assignment of error, the Defendant argues that the trial court erred by allowing the investigating detective to testify that the Defendant was identified as a suspect in the armed robbery, when that information came solely from an accomplice who was not available for cross-examination. He contends that this violated the Defendant's constitutional rights guaranteed by the Confrontation Clause of the Sixth Amendment.[4]
In his motion in limine, the Defendant had argued for and obtained a ruling that the statements made by codefendant Beverly to the police would not be admissible. The Defendant argued that since Beverly was unavailable to testify, he would not be able to confront Beverly concerning his inculpatory statements implicating him in the crime. This precluded the Defendant from having the opportunity to cross-examine Beverly, which he had not had on any prior occasion, thus rendering Beverly's statements inadmissible. The trial court granted the motion excluding the content of the statement made by Beverly and any statements in which he accused or sought to inculpate the Defendant.
At trial, defense counsel objected when the prosecutor asked Detective Locascio, ". . . during the course of your investigation, did you develop the name of any other suspects in the robbery?" Defense counsel argued that it was a Crawford v. Washington[5] violation' because his name could have only come from Beverly who was unavailable for cross-examination. The prosecutor informed the court that the detective was "going to say that the defendant's name was developed when he was put in a lineup that was shown to the victim." The trial judge found no problem with that statement and overruled the objection. Defense counsel claimed that it was still a confrontation violation.
*702 On appeal, the Defendant cites this Court's decision in State v. Williams,[6] 04-608 (La.App. 5 Cir. 11/30/04), 889 So.2d 1093, writ denied, 05-0081 (La.4/22/05), 899 So.2d 559, in support of his argument that his constitutional rights guaranteed by the Confrontation Clause of the Sixth Amendment were violated when the trial court allowed Detective Locascio to testify that his investigation led to the identity of the defendant. The Defendant also argues that the photographic lineup identification made by Davis should be excluded because it was tainted by Beverly's unconstitutional statement identifying him.
Further, the Defendant asserts that any error in admitting Detective Locascio's testimony about his identification as a suspect cannot be found harmless. Detective Locascio's testimony about his identification as a suspect was neither cumulative nor duplicative of any other testimony presented by the State. The identification by Beverly was the only independent evidence tying him to the crime. Neither Davis nor Lamarque could give the police an independent basis to develop him as a suspect.
The State points out that the Defendant's arguments lack merit for the simple reason that Beverly's statements were not referred to or admitted into evidence at trial. The jury was never made aware that Beverly gave a statement to the police. None of the officers testified that Defendant's photograph was placed in the lineup based on Beverly's statement. The officers only testified that Defendant's photograph was placed in a lineup after he was "developed" as a suspect. The State contends that Detective Locascio's testimony was only offered to explain the course of the police investigation, i.e., why the Defendant's photograph was placed in the photographic lineup. Therefore, Detective Locascio's testimony was not hearsay because he did not refer to any statements made by someone else to prove the fact of the Defendant's guilt or the truth of the matter asserted. The State notes that Defendant has cited no case law to show that his confrontation rights pursuant to Crawford v. Washington were violated by Detective Locascio's testimony. The State contends even if the testimony was erroneously admitted, that it was harmless because it was cumulative and corroborative of other testimony proving the Defendant's guilt.
The Sixth Amendment to the United States Constitution guarantees an accused the right to confront the witnesses against him in a criminal prosecution. La. Const. art. I, § 16. State v. Williams, 04-608, p. 8 (La.App. 5 Cir. 11/30/04), 889 So.2d 1093, 1100, writ denied, 05-0081 (La.4/22/05), 899 So.2d 559. The main and essential purpose of the confrontation clause is to secure for the accused the opportunity of cross-examination, since it is the principal way to test the believability and truthfulness of a witness' testimony and to impeach or discredit a witness. Williams, 04-608 at pp. 8-9, 889 So.2d at 1100. It has been held that an error in the defendant's right to confrontation is subject to a harmless error analysis. Williams, 04-608 at p. 11, 889 So.2d at 1102.
Williams is relied on by the defense, because this Court, after performing a Crawford v. Washington analysis, found that the Defendant's rights had been violated. In that case, a codefendant refused to testify at Williams' trial, asserting his Fifth Amendment privilege. Nevertheless, *703 the codefendant was called to the stand and his statement was essentially admitted at trial through questions by the prosecutor, referring to what he had said hi an earlier statement, while the codefendant repeatedly gave unresponsive answers. The defendant claimed that he was denied his right to confrontation by the trial court's admission of a non-testifying codefendant's confession that contained statements that implicated him. This Court found under a Crawford v. Washington analysis, that because the codefendant was effectively unavailable, by asserting his Fifth Amendment privilege and persisting in his refusal to testify concerning the subject matter of his statement, and the defense had never had an opportunity to cross examine the codefendant, the use of his statement implicating the defendant violated Williams' confrontation rights.
However, we find the present case is distinguishable from Williams because Beverly's statement was not admitted into evidence, quoted in part or referred to in any way. Although the Defendant argues that, effectively, the jury did know that the identification of the Defendant as a suspect came from Beverly because there was no other way the police could have discovered it, we disagree with this argument. There are many ways the police "develop" information, from fingerprints to community assistance. The officer's testimony that the Defendant was "developed" as a suspect can not be logically or realistically construed to be the same as testimony that Beverly told the officer the Defendant was his accomplice. Therefore, we find, since no part of Beverly's statement was admitted into evidence, there is no confrontation violation and no error in the trial court ruling allowing the officer to testify that the Defendant was "developed" as a suspect. The Defendant's argument, that the officer's testimony cannot be viewed as harmless, is moot because we find no error in the admission of the testimony.
This assignment of error lacks merit.
ERROR PATENT DISCUSSION
Defendant requests an error patent review. The record was reviewed for errors patent, according to La.C.Cr.P. art. 920. State v. Oliveaux, 312 So.2d 337, (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We find no errors which required corrective action.
Accordingly, for the reasons set out above we affirm the Defendant's conviction for armed robbery with a firearm and his sentence to 35 years at hard labor, without benefit of parole, probation or suspension of sentence.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] In his motion in limine, the Defendant sought to prevent the presentation of any evidence implicating him through inculpatory statements made by his codefendant, Freddie Beverly. The Defendant claimed that because Beverly's statements were not trustworthy, he was not going to testify at trial, and the Defendant had never had an opportunity to cross-examine him, his statements were inadmissable.
[2] Detective Roger Gorumba of the Jefferson Parish Sheriff's Office testified that he compiled the photographic lineup using the Defendant's picture.
[3] The State filed a multiple offender bill of information alleging that the Defendant was a second felony offender. The multiple offender proceeding is not a part of this appeal. The transcript of the multiple offender proceeding is not included in the record.
[4] The Defendant has attached a copy of Beverly's police statement to his brief. However, Beverly's statement was not admitted into evidence at trial. The review of evidence attached to an appellate brief and not introduced at trial is beyond the scope of an appellate review. State v. Hotoph, 99-243, p. 29 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1053, writ denied, 99-3477 (La.6/30/00), 765 So.2d 1062 and 00-150 (La.6/30/00), 765 So.2d 1066. Therefore, an appellate court is precluded from considering evidence which is not part of the record. Id.
[5] In Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court discussed the Confrontation Clause. The Supreme Court held that "in order for a statement obtained during police interrogation to be admissible against an accused in a criminal trial, it must be shown that the declarant is unavailable and there was a prior opportunity to confront the witness." State v. Jackson, 04-1388, p. 9 (La. App. 5 Cir. 5/31/05), 904 So.2d 907, 913, writ denied, 05-1740 (La.2/10/06), 924 So.2d 162.
[6] In his brief, the Defendant mistakenly refers to this Court's decision in State v. Williams as a Louisiana Supreme Court case.