MADELINE JASMINE, Judge Pro Tempore.
| ^Defendant, Brandon E. Robertson, appeals his conviction for second degree murder. On appeal, he assigns the following errors of the trial court:
1. It was error to deny the Motion to Suppress the Statement.
2. The prosecutor’s closing argument was an improper appeal to have the jurors imagine their loved ones as the victim, in an attempt to turn appellant’s trial into a plebiscite on crime. Defense counsel’s failure to move for a mistrial on the basis of the improper argument was ineffective assistance of counsel.
3. 6th Amendment Confrontation Clause (pro se).
4. All errors patent.
Following a thorough review of the record and applicable law, we affirm the defendant’s conviction.

PROCEDURAL HISTORY

The Jefferson Parish District Attorney filed an indictment charging defendant, Brandon E. Robertson, with second degree murder in violation of LSA-jR.S.a 14:3o.!.[1] Defendant pled not guilty to this charge. The trial court thereafter denied defendant’s Motion to Suppress Evidence, Statements and Identification. Defendant *654 proceeded to trial, and a twelve-person jury found defendant guilty as charged.
Defendant filed a Motion for New Trial, which was denied by the trial court. The trial court then sentenced defendant to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence and denied defendant’s Motion to Reconsider his Sentence. This timely appeal follows.

FACTS

Harriet Braun, the victim, lived at 1516 Williams Boulevard in Kenner. She also worked in an office at this address as a notary and an insurance agent. On March 12, 2001, her daughter, Lori Nixon, arrived at Harriet Braun’s residence at approximately 6:10 p.m. She noticed the front door to her mother’s residence was open. Lori Nixon entered through the back door, as she always did. Usually, she announced herself when she entered, but this time she received no answer. After observing her 69-year old mother lying on the floor surrounded in blood, she called 911.[2]
The victim died as a result of multiple gunshot wounds to her chest. When the officers arrived at the scene, the victim was found facedown in a pool of blood with one arm tucked underneath her. She was holding a 38 caliber five-shot revolver, with four bullets and one spent casing. It appeared she fired one shot from the revolver. The victim kept this gun in the bottom drawer of her desk.[3] |4Some desk drawers had been pulled out and a chair knocked over. The officers also recovered two spent casings from a semiautomatic handgun that was not found at the scene. A hat was found in the front yard by the sidewalk.
Lan Ma lived near the victim. As she was walking to Winn-Dixie, she heard a “big noise” and then saw two individuals run out of the business to the sidewalk. She saw one individual fall down, get back up, and continue to run. When she returned from Winn-Dixie, she noticed a hat on the ground that she had not noticed when she had previously walked there.
James Welborn found a Bryco 380 caliber handgun while crawfishing on the side of the road around St. Rose Avenue and Airline Highway. He called the St. Charles Parish Sheriffs Office and they picked it up from him. Detective Cunningham of the Kenner Police Department, who was investigating this homicide, knew that the shell casings found at the scene of Harriet Braun’s homicide possibly came from a 380 caliber handgun and submitted the gun for ballistics testing. It was determined that the two projectiles removed from the victim’s body during the autopsy were fired from this Bryco handgun.
During the investigation, suspects were developed after officers interviewed witnesses and received an anonymous telephone message. One witness even made an identification from a photographic lineup and a suspect was arrested. However, this suspect was later released and charges were dismissed. There were no other leads in the investigation until about eleven months later when Detective Cunningham spoke with Allen Narcisse.
Eventually, a search warrant was obtained for defendant’s DNA. A saliva sample was collected from defendant and submitted to the lab. The hat found at the *655 scene contained a DNA profile coming from at least two donors. According to Anne Montgomery, an expert in forensic DNA analysis, defendant’s DNA profile |fiwas compared to the DNA profile from the hat. Defendant was not able to be excluded as a possible donor to the DNA on the hat.
An arrest warrant was obtained, and defendant was arrested about a year and a half after the homicide. Defendant gave a statement to Detective Cunningham. In this statement, defendant stated that he and Craig London planned to rob the insurance place on Williams Boulevard. When they arrived, Craig London demanded the money, but the victim refused to give him money, began cursing, reached in her drawer, and pulled out a gun. After the victim fired her gun, London fired the gun he had. As defendant and London left, defendant fell by the sidewalk and his hat fell off. According to defendant, they did not leave with any money. A photograph of the Bryco gun that tested positive to being used in the homicide was shown to defendant during the interview. Defendant said it looked like the gun used.

ASSIGNMENT OF ERROR NUMBER ONE

Defendant argues that the trial court erred in denying the Motion to Suppress his statement because the State failed to prove his waiver of rights and subsequent confession were knowing, intelligent, and voluntary. He argues that Detective Cunningham was informed six weeks prior to the interrogation that attorney Kerry Brown was representing defendant and failed to contact Kerry Brown once defendant was arrested.[4]
| fiThe State responds that defendant’s confession was freely, knowingly, and voluntarily given. It argues that defendant was informed of his Miranda[5] rights, including his right to counsel, and executed a written waiver of rights form. It also argues that defendant did not invoke his right to counsel. As such, the State concludes the trial court correctly denied defendant’s Motion to Suppress.
Detective Michael Cunningham of the Kenner Police Department was the sole witness who testified at the suppression hearing. Detective Michael Cunningham investigated the murder of Harriet Braun and at some point developed defendant as a suspect. As noted above, a search warrant was obtained for the defendant’s DNA, the analysis of which led to the arrest warrant for defendant. Robertson was arrested based on the arrest warrant.
Prior to defendant’s interview, Detective Cunningham advised defendant of his rights, including his right to an attorney. Defendant acknowledged that he understood these rights, wished to waive the rights, and to provide a statement. A written advice of rights form was executed. According to Detective Cunningham, defendant was not forced, threatened, or *656 coerced into giving his statement. After waiving his rights, defendant gave a taped statement in connection with the incident. During this statement, defendant agreed that they went over the advice of rights form, that he understood his rights, and that he waived his rights in order to make a statement.
During the investigation and prior to defendant’s arrest and statement, Detective Cunningham talked to an attorney, Kerry Brown, twice. In their first conversation, Mr. Brown advised Detective Cunningham that defendant was his client. During the second conversation, however, Mr. Brown said he was going to speak to defendant, but they had not made any payment agreement yet as far as his ^representation of defendant. Detective Cunningham did not contact Mr. Brown after learning defendant was arrested.[6]
The trial court denied defendant’s Motions to Suppress. In doing so, the trial judge explained that there were no actions by Mr. Brown to indicate he was indeed retained to represent defendant. Further, the judge explained that at no time did defendant invoke his right to counsel.
The trial court’s decision to deny a Motion to Suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Burns, 04-175, p. 5 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1075. A trial court has great discretion when ruling on a Motion to Suppress, and its ruling will not be disturbed absent an abuse of that discretion. State v. Nicholas, 06-903, p. 6 (La.App. 5 Cir. 4/24/07), 958 So.2d 682, 686.
The State has the burden of proving the admissibility of a purported confession or statement by the defendant. LSA-C.Cr.P. art. 703(D). Before an inculpatory statement made during a custodial interrogation[7] may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, that he voluntarily and intelligently waived his Miranda rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement, or promises. State v. Franklin, 03-287, p. 4 (La.App. 5 Cir. 9/16/03), 858 So.2d 68, 70, unit denied, 03-3062 (La.3/12/04), 869 So.2d 817; see also LSA-R.S. 15:451; | State v. Blank, 04-0204, pp. 9-10 (La.4/11/07), 955 So.2d 90, 103, cert. denied, — U.S.-, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007).
A determination of voluntariness is made on a case-by-case basis, depending on the totality of the facts and circumstances of each situation. Franklin, supra. The admissibility of a confession or statement is a determination for the trial judge and the judge’s conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great *657 weight and will not be overturned unless unsupported by the evidence. Id.
In Miranda v. Arizona, 384 U.S. at 469-73, 86 S.Ct. at 1625-27, the United States Supreme Court held that the Fifth Amendment gives a suspect subject to custodial interrogation a right to consult with counsel prior to questioning, as well as a right to have counsel present during any questioning. The police are required to explain this right to the suspect prior to questioning. State v. Payne, 01-3196, p. 7 (La.12/4/02), 833 So.2d 927, 934. After a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning a suspect unless or until he clearly requests an attorney. State v. Gant, 06-232, p. 28 (La.App. 5 Cir. 9/26/06), 942 So.2d 1099, 1122, writ denied, 06-2529 (La.5/4/07), 956 So.2d 599 (citing Davis v. United States, 512 U.S. 452, 461, 114 S.Ct. 2350, 2356, 129 L.Ed.2d 362 (1994)).
A cessation of questioning is not required if the suspect makes a reference to an attorney that is ambiguous or equivocal, which causes a reasonable police officer, in light of the circumstances, to understand only that the suspect might be invoking the right to counsel. State v. Gant, supra (emphasis added). To invoke his right to counsel, the suspect must articulate his desire to have counsel present with sufficient clarity to enable a reasonable police officer, in the circumstances, to understand his statement to be a request for an attorney. Id. The invocation of the | aright to counsel during the custodial interrogation “requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police.” State v. Payne, 01-3196 at 9, 833 So.2d at 935 (quoting McNeil v. Wisconsin, 501 U.S. 171, 178, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1991) (emphasis in original)).
The right to counsel “is the right of the client rather than the attorney, so that it may be waived by the client without counsel’s participation.” State v. Carter, 94-2859, p. 17 n. 12 (La.11/27/95), 664 So.2d 367, 380 (quotation omitted).[8] Regardless of whether defendant was represented by counsel at the time of the in *658 terrogation, it does not appear defendant invoked his right to counsel.
In State v. Dixon, 527 So.2d 401, 402-03 (La.App. 4 Cir.1988), writ denied, 537 So.2d 1158 (La.1989), a lawyer was sent by the defendant’s mother to the police station to inquire as to why defendant had been asked for an interview. The testimony was conflicting as to whether the attorney was acting as a friend or in a representative capacity. The defendant was subsequently questioned and waived his Miranda rights. The defendant argued the police should not have questioned him without first contacting his attorney. The court accepted the trial judge’s finding that the attorney was acting in a representative capacity and held that the defendant never invoked his right to counsel, even when questioned about |10his attorney. It further found the confession was freely, voluntarily, knowingly, and intelligently made.
Testimony of the interviewing police officer alone may be sufficient proof that a defendant’s statements were freely and voluntarily given. State v. Mackens, 35,350, p. 13 (La.App. 2 Cir. 12/28/01), 803 So.2d 454, 463, writ denied, 02-0413 (La.1/24/03), 836 So.2d 37. In the present case, defendant was advised of his Miranda rights, including his right to counsel. Defendant signed a waiver of rights form.[9] The evidence shows that defendant made a knowing and intelligent waiver of his right to counsel. It also appears the waiver of his right to counsel was voluntary because the detective testified that defendant was not coerced or threatened into making the statement. Because defendant did not invoke his right to counsel and subsequently made a valid waiver, the trial court did not abuse its discretion in denying defendant’s Motion to Suppress.

ASSIGNMENT OF ERROR NUMBER TWO

Defendant argues that the prosecutor’s improper emotional appeal to the jury during closing argument in this case is of great significance when the defendant’s guilt was not overwhelming. Defendant argues that the improper argument should have resulted in a mistrial and that his counsel’s failure to move for a mistrial rendered his representation ineffective.
The State responds that the prosecutor’s remarks during closing arguments did not warrant a mistrial and, therefore, counsel was not obligated to move for one. It contends that the comments were not a plebiscite on crime and the choice between objecting or moving for a mistrial was a trial tactic and strategic decision l^that should not be second guessed. The State also argues that defendant cannot show prejudice because the court found no merit in counsel’s objections to the prosecutor’s remarks.
During closing argument, the prosecutor said the following:
Ladies and gentlemen, if we are to survive as a community, post-Katrina, if Jefferson Parish is to survive as a community, we have to do what’s right. And if that means putting someone in jail who was involved in a killing then that’s what needs to be done. Because I don’t stand here before you simply on behalf of Laurie Nixon, and her brother and her sister. I stand here before you as a representative of the entire community. And if something happened to my son—
*659 At this time, defendant objected, stating that he thought it was inappropriate for the prosecutor to personalize. The trial judge sustained this objection. The prosecutor continued his argument, stating
Of course, we have to protect ourselves and we have to protect people like Harriet Braun. But, we all have family members. We all have mothers. We all have relatives, brothers and sisters who have businesses, who are trying to make a living. We need to protect them as well as—
The trial judge overruled defendant’s objection that the argument was inappropriate and went beyond the facts of the case. The prosecutor then argued the following:
We need to protect all of us who live in Jefferson Parish. And if doing that means that we have to send someone to jail, to take responsibility, then that’s what we need to do.
And ladies and gentlemen, I don’t stand here before you, in front of the defendant’s family, who have been here for a few days, very quiet people. They’ve sat here. And I can’t stand before you and say that I take great pleasure in arguing that their son needs to go to jail, that needs to take responsibility for that crime. I don’t. But the defendant needs to take responsibility. We need to protect ourselves from that type of behavior. We need, not only to protect ourselves, but our mothers, our fathers, our brothers, our sisters.
Defendant objected that the prosecutor had gone too far, and the trial judge stated that she had overruled the objection.
|]2It appears that defendant contends that his counsel should have moved for a mistrial on the same basis as the unsuccessful objections he made following the prosecutor’s comments.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. State v. Lagarde, 07-123, p. 17 (La.App. 5 Cir. 5/29/07), 960 So.2d 1105, 1117, writ denied, 07-1650 (La.5/9/08), 980 So.2d 684. In assessing a claim of ineffectiveness, a two-pronged test established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) is employed. The defendant must show that (1) his attorney’s performance was deficient, and (2) the deficiency prejudiced him. To establish prejudice, the defendant must show that, but for counsel’s unprofessional conduct, the outcome of the trial would have been different. State v. Lagarde, supra (citing Strickland v. Washington, supra).
A claim of ineffective assistance of counsel is most appropriately addressed through an Application for Post-Conviction Relief rather than direct appeal, so as to afford the parties an adequate record for review. State v. Lagarde, 07-123 at 16-17, 960 So.2d at 1117. Only when the record contains sufficient evidence to decide the issue and the issue is properly raised by Assignment of Error on appeal, may it be addressed in the interest of judicial economy. State v. Lagarde, 07-123 at 17, 960 So.2d at 1117. We find that the record is sufficient to decide the issue on appeal.
LSA-C.Cr.P. art. 774 requires that closing arguments at trial be confined “to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.” Closing arguments shall not appeal to prejudice. LSA-C.Cr.P. art. 774. Prosecutors may not resort to personal experience or turn their arguments into a plebiscite on crime. |13 State v. Williams, 96-1023, p. 15 (La.1/21/98), 708 So.2d 703, 716, cert. de *660 nied, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998).
The trial judge has broad discretion in controlling the scope of closing arguments. State v. Taylor, 07-93, p. 31 (La.App. 5 Cir. 11/27/07), 973 So.2d 83, 103, writ denied, 07-2454 (La.5/9/08), 980 So.2d 688. A conviction will not be reversed due to improper remarks during closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Jackson, 04-293, pp. 5-6 (La.App. 5 Cir. 7/27/04), 880 So.2d 69, 73, writ denied, 05-0232 (La.5/6/05), 901 So.2d 1094. In making its determination, the appellate court should give credit to the good sense and fair-mindedness of the jury that has seen the evidence and heard the argument, and has been instructed that the arguments of counsel are not evidence. Jackson, 04-293 at 6, 880 So.2d at 73.
An improper comment during closing argument falls within the ambit of LSA-C.Cr.P. arts. 770 and 771.[10] These articles authorize the trial court to correct a prosecutor’s prejudicial remarks by ordering a mistrial or admonishing the jury, upon the defendant’s request. State v. Taylor, 07-93 at 31-32, 973 So.2d at 103.
LSA-C.Cr.P. art. 770 states the following:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, 114district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. State v. Lagarde, 07-123 at 10, 960 So.2d at 1113. Although improper, the prosecutor’s comments in the present case do not appear to *661 fall within the scope of LSA-C.Cr.P. art. 770, mandating a mistrial. Thus, it does not appear that counsel was deficient for failing to request a mistrial. Although the prosecutor’s comments appear improper, defense counsel did object to the comments when they were made.
“Prosecutors should not turn closing argument into a plebiscite on crime by making overt references to community sentiment.” State v. Deboue, 552 So.2d 355, 364 (La.1989), cert. denied, 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 174 (1990). Though we find that the prosecutor’s arguments were improper under LSA-C.Cr.P. art. 774, it does not appear that these comments warrant reversal.
|1fiAs noted above, a conviction will not be reversed due to improper remarks during closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict.[11]
In State v. Francis, 95-194, pp. 12-14 (La.App. 5 Cir. 11/28/95), 665 So.2d 596, 604, the defendant complained about the prosecutor’s appeal to the jury to protect their parish during closing arguments. This Court found that even assuming the prosecutor’s argument was improper, it was not an error that would require reversal. Citing State v. Messer, 408 So.2d 1354 (La.1982),[12] this Court noted that a prosecutor should refrain from argument which tends to divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions of the consequences of the jury’s verdict.
Based on the foregoing, we find the prosecutor’s remarks during closing argument were improper, but that counsel’s conduct in objecting to the prosecutor’s comments instead of requesting a mistrial do not constitute deficient performance. He does not explain how moving for a mistrial instead of merely objecting to the comments would have brought about a different ruling from the trial court. He further does not show that, but for counsel’s conduct, the outcome of the trial would have been different. This Assignment of Error has no merit.

PRO SE ASSIGNMENT OF ERROR NUMBER ONE

Defendant argues that it was error to allow the hearsay testimony of Detective Cunningham that Allen Narcisse gave him information resulting in | ^defendant’s arrest. Because defendant was not able to cross-examine Allen Nar-cisse, defendant argues he was denied his Sixth Amendment rights.
During trial, the State asked Detective Cunningham if he received information in February of 2002 and then asked who he had spoken with. Detective Cunningham answered affirmatively and then stated that he spoke with Allen Narcisse. When Allen Narcisse was mentioned in Detective Cunningham’s testimony, defendant objected that it was never indicated that Narcisse would testify and that Detective Cunningham suggested he received information from Narcisse that was used to *662 develop defendant as a suspect. The prosecutor explained that he was not asking for hearsay information, but just wanted to know if the detective had a conversation with Narcisse and as a result of that, what did the detective do. Defense counsel moved for a mistrial, and the-trial court denied the motion.
Defendant re-urged his objection after the following line of questioning:
Q. Mr. Cunningham, do [sic] you speak with someone by the name of Allen Nar-cisse?
A. Yes, sir, I do [sic].
Q. Did you know Allen Narcisse before that day?
A. No, sir.
Q. Had you ever heard the name Allen Narcisse before that day?
A. No, sir.
Q. Had you ever come into contact with Allen Narcisse before that day?
A. No, sir.
Q. When you speak with Allen Nar-cisse 11 months after Whitney Wallace is released, did your investigation resume?
A. Yes, sir.
117Q. And your investigation resumes because you have new information or not?
A. Yes, sir.
Q. You have new information?
Thereafter, defendant objected and moved again for a mistrial. The trial judge denied his motion and overruled his objection. Detective Cunningham continued his testimony, describing what happened in his investigation after receiving the information.
The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to be confronted with the witnesses against him. State v. Borden, 07-396 (La.App. 5 Cir. 5/27/08), 986 So.2d 158, 169. The confrontation clause of the Louisiana Constitution expressly guarantees the accused the right “to confront and cross-examine the witnesses against him.” Id. (quoting La. Const. of 1974 art. I, § 16). Confrontation rights mean more than the ability to confront witnesses physically. State v. Borden, supra. Their main purpose is to secure for the defendant the opportunity to cross-examine. Id. Cross-examination is the primary means by which to test the believability and truthfulness of testimony, and it provides an opportunity to impeach or discredit witnesses. Id.
Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. LSA-C.E. art. 801 C. Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. LSA-C.E. art. 802; State v. Leonard, 05-42, p. 14 (La.App. 5 Cir. 7/26/05), 910 So.2d 977, 986, writ denied, 06-2241 (La.6/1/07), 957 So.2d 165.
|18 In Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court discussed the Confrontation Clause and held that testimonial hearsay statements may be admitted as evidence at a criminal trial only when the declarant is unavailable to testify and the defendant has had a prior opportunity to cross-examine the declarant. State v. Borden, 986 So.2d at 169.
An error in the defendant’s right to confrontation is subject to a harmless error analysis. State v. Williams, 04-608, p. 11 (La.App. 5 Cir. 11/30/04), 889 So.2d 1093, 1102, writ denied, 05-0081 (La.4/22/05), 899 So.2d 559. If a confrontation error occurred, a reviewing court *663 must determine whether the error is harmless beyond a reasonable doubt. Id. The factors considered when determining whether the guilty verdict rendered was unattributable to the error include the importance of the witness’ testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on major points, the extent of cross-examination that was otherwise permitted, and, the overall strength of the State’s case. Id.
We find no error in the testimony. At trial, Detective Cunningham merely stated that he had no further leads until he spoke with Allen Narcisse and that after he spoke with him his investigation resumed. Allen Narcisse’s statement itself was not introduced.
A police officer, in explaining his own actions, may refer to statements made to him by other persons involved in the case. State v. Taylor, 07-93, p. 23 (La.App. 5 Cir. 11/27/07), 973 So.2d 83, 98, writ denied, 07-2454 (La.5/9/08), 980 So.2d 688. Such statements are admitted not to prove the truth of the matter asserted, but to explain the sequence of events leading to the arrest of the defendant from the officer’s viewpoint. Id.
|19 In State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000), the Louisiana Supreme Court commented on the admissibility of information received by a police officer:

Admission of information received by a police officer in the investigation of a crime, on the basis that such information explains the officer’s presence and conduct and therefore does not constitute hearsay evidence, is an area of undespread abuse. McCormick on Evidence § 249 (E. Cleary 3d ed.1984). Such information frequently has an impermissible hearsay aspect as well as a permissible nonhearsay aspect, and the court in determining admissibility should balance the need of the evidence for the proper purpose against the danger of improper use of the evidence by the jury. Id. The fact that an officer acted on information received in an out-of-court assertion may be relevant to explain his conduct, but this fact should not become a passkey to bring before the jury the substance of the out-of-court information that would otherwise be barred by the hearsay rule. G. Pugh, Louisiana Evidence Law 129-4.31 (1974).

When an out-of-court statement, such as information received by a police officer during an investigation of a crime, has both an impermissible hearsay aspect and a permissible nonhearsay aspect, the issue of relevancy becomes significantly interrelated with the hearsay issue. If the nonhearsay content of the statement has little or no relevance, then the statement should generally be excluded on both relevance and hearsay grounds. Marginally relevant nonhear-say evidence should not be used as a vehicle to permit the introduction of highly relevant and highly prejudicial hearsay evidence which consists of the substance of an out-of-court assertion that was not made under oath and is not subject to cross-examination at trial.

State v. Broadway, 96-2659 at 7-8, 753 So.2d at 808 (emphasis as found in original).
In State v. Toussaint, 07-353, p. 6 (La.App. 5 Cir. 12/11/07), 974 So.2d 698, 701, the defendant argued that the trial court erred by allowing the investigating detective to testify that the defendant was identified as a suspect, when that information came solely from an accomplice who was *664 not available for cross-examination. He argued that this violated the Confrontation Clause of the Sixth Amendment. Toussaint, 07-353 at 6-7, 974 So.2d at 701. This Court noted that the accomplice’s statement was not admitted into evidence, quoted in part or | ¡^referred to in any way. Toussaint, 07-353 at 10, 974 So.2d at 703. Although the defendant argued that, effectively, the jury did know that the identification of the defendant as a suspect came from the accomplice because there was no other way the police could have discovered it, this Court disagreed and found the testimony could not be logically or realistically construed to be the same as testimony that the accomplice told the officer the defendant was his accomplice. Id. Therefore, this Court found, since no part of the statement was admitted into evidence, there was no confrontation violation and no error in the trial court ruling allowing the officer to testify that the defendant was “ ‘developed’ ” as a suspect. Id.
In the present case, there was no error in the admission of Detective Cunningham’s testimony. Allen Narcisse was only mentioned at trial to show during the course of the investigation how defendant came to be a suspect and was eventually arrested for the victim’s murder. The testimony was not that Allen Narcisse told Detective Cunningham that defendant committed the homicide. The testimony was simply that the detective’s investigation resumed after he received a lead from Allen Narcisse. After Detective Cunningham followed this lead, defendant was ultimately developed as a suspect and arrested for the homicide.

ASSIGNMENT OF ERROR NUMBER THREE

The Defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request. The review reveals no errors patent in this case.
| ■>,Accordingly, defendant’s conviction is affirmed.

AFFIRMED.

. Craig London was also charged in this indictment, but the defendants were later severed for trial.

. This 911 tape was played for the jury.

. A projectile was recovered from the scene and was later discovered to have come from the victim's 38 caliber handgun. It appears that this projectile was found on the same side of the office where the sheetrock above the window near the door was damaged from being hit by a bullet.

. Defendant mentions in his brief that he was not given food or drink nor afforded an opportunity to smoke during his time in custody before giving his statement. It is unclear as to whether defendant mentions this in an attempt to establish that his statement was involuntarily given. Regardless, any such argument is waived because defendant only makes a conclusory statement without briefing the argument. Pursuant to Rule 2-12.4 of the Uniform Rules, Courts of Appeal, all specifications or assignments of error must be briefed, and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed. Restating an assigned error in brief without including argument or citation of authority does not constitute briefing. State v. Lauff, 06-717, p. 9 (La.App. 5 Cir. 2/13/07), 953 So.2d 813, 819.

. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

. To determine whether the trial court's denial of the Motion to Suppress is correct, the appellate court may consider evidence adduced at the suppression hearing as well as evidence presented at trial. State v. Young, 05-702, p. 8 (La.App. 5 Cir. 2/14/06), 938 So.2d 90, 96-97. See also State v. Leger, 05-0011, p. 10 (La.7/10/06), 936 So.2d 108, 122, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). Detective Cunningham’s testimony at trial was basically the same as his testimony at the suppression hearing.

. The United States Supreme Court defined “custodial interrogation" as the "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” Miranda v. Arizona, 384 U.S. at 444, 86 S.Ct. at 1612.

. In State v. Carter, 94-2859, p. 2 (La.11/27/95), 664 So.2d 367, 370, the defendant was arrested and appeared in court for an initial appearance. At the appearance, the judge appointed a public defender to represent him. Two days later, an officer met with the defendant in jail, advised him of his rights, and asked him if he wanted to make a statement. The defendant said he did and that he understood his rights. He signed a waiver of rights form, which included the right to remain silent and to have an attorney present during questioning, and which notified him that any statements he might make could be used against him at trial. He thereafter made a statement. The defendant subsequently filed a motion to suppress the statement, which was denied. Id.
The Louisiana Supreme Court in Carter held that where a defendant's federal and state constitutional right to counsel has attached, but where defendant has not asserted or invoked the right which has attached, he may validly waive his right to counsel during an interrogation, provided the waiver is knowing, intelligent and voluntary. The court in Carter stated that “[sjomething more than mere mute acquiescence in the appointment of counsel [was] necessary to show the defendant has asserted his right to counsel. ...” Carter, 94-2859 at 21-22, 664 So.2d at 383. The court recognized that some affirmative assertion of the right to counsel was necessary in order to give rise to the per se presumption in Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) that a waiver, later made in response to police-initiated interrogation, could not possibly have been voluntary because of the earlier assertion of the right to counsel. Carter, 94-2859 at 22, 664 So.2d at 383.

. The advice of rights form presented at the suppression hearing, State's Exhibit 2, included defendant's right to consult with and obtain the advice of an attorney before answering any questions and also the waiver of this right to answer questions without a lawyer.

. LSA-C.Cr.P. art. 771 states:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

. State v. Jackson, 04-293, pp. 5-6 (La.App. 5 Cir. 7/27/04), 880 So.2d 69, 73, writ denied, 05-0232 (La.5/6/05), 901 So.2d 1094.

. In State v. Messer, supra, at 1356-57, the Louisiana Supreme Court held that the prosecutor’s remarks in closing argument, which amounted to a ‘community call to arms’ ” were clearly improper as they were designed to personalize crimes for the jury and make it appear that the defendant’s gunshots at troopers were somehow directed at the parish as a whole. However, the court concluded that, although improper, the error did not require reversal, in view of substantial evidence of defendant’s guilt of the crimes charged.