JUDE G. GRAVOIS, Judge.
 

 |2Pefendant Samuel Smallwood appeals his conviction of aggravated rape of a juvenile, a violation of LSA-R.S. 14:42. On appeal, he argues that there was insufficient evidence to support the verdict. He also argues that the trial court unduly restricted his closing argument, and that the trial court improperly denied a mistrial after the prosecutor made improper remarks during closing arguments. He further assigns all errors patent.
 

 After thoroughly reviewing the record and applicable law, we find no merit to the assigned errors, and affirm defendant’s conviction. The review of the record discloses errors patent, which are addressed below.
 

 FACTS
 

 During the 2004 Christmas holidays, T.W.
 
 [1]
 
 learned that her son, A.W., who was seven years old at the time, behaved inappropriately with her cousin’s | -¡daughter by “feeling on her.” When she questioned A.W. about the incident, A.W. was evasive. At some point, A.W. told his mother that defendant, a family friend whom A.W. called Uncle Sam and who often babysat A.W. and his younger brother, C.W., had “played with his butt.” On a separate occasion, A.W. told his father, K.W., that defendant played with his butt and when he laid back everything was wet behind him. Thereafter, K.W. confronted defendant, but defendant denied AW.’s accusations.
 

 Faced with conflicting stories, A.W.’s parents brought A.W. to Children’s Hospital in February 2005 for an examination. Dr. Ellie Wetsman obtained a history from A.W. outside the presence of his parents, and conducted a physical examination. During the examination, A.W. told Dr. Wetsman that his Uncle Sam “put his private part in my backside,” that it happened often, and that he sometimes felt something wet. The physical examination revealed A.W. had a possible genital wart on his anus. Dr. Wetsman explained that genital warts are caused by the human papilloma virus (HPV), which can be sexually transmitted. She concluded that A.W.’s genital wart was consistent with sexual abuse.
 

 Children’s Hospital referred the case to the New Orleans Police Department because A.W. lived in New Orleans. A.W. was subsequently interviewed at the New Orleans’ Children’s Advocacy Center (CAC). The interview was videotaped and the videotape was played for the jury. During the interview, A.W. indicated defendant put his private part in A.W.’s rear end and stated the abuse occurred at defendant’s house.
 

 Once it was learned that the abuse occurred at defendant’s apartment, which was in Metairie, the case was referred to the Jefferson Parish Sheriffs Office. Thereafter, Detective Jason Guillot with the Jefferson Parish Sheriffs Office obtained a warrant for defendant’s arrest. Defendant was ultimately located and Larrested at his workplace in St. Tammany Parish, where he had recently moved.
 
 *483
 
 Detective Guillot obtained a search warrant to have defendant examined and tested for sexually transmitted diseases because of the presence of genital warts on the victim. Defendant was examined by Dr. Damon Dietrich, an emergency room doctor at West Jefferson Hospital, who did not see any genital warts on defendant.
 
 [2]
 

 After being examined, defendant was re-toned to the Detective Bureau where he gave a statement denying that he had anally raped or inappropriately touched A.W. in any way. He also told Detective Guillot that A.W.’s mother, father, and uncle all had genital warts. Because of defendant’s allegations that A.W.’s parents and uncle had genital warts, all three were examined for genital warts and were found not to have them.
 

 Detective Guillot also spoke with A.W. about what happened. A.W. was nervous and asked if he could write down what happened with defendant. Detective Guil-lot gave him a piece of paper and A.W. wrote, “He put His private in my Back side.”
 

 Approximately two months later, defendant consented to a second examination for genital warts. The exam was conducted by a dermatologist who observed multiple genital warts on defendant’s penis.
 

 At trial, A.W., who was eleven years old at the time, testified that defendant started babysitting him when he was five or six years old. He stated that there came a time when he did not like going over to defendant’s house because defendant would touch his private areas. A.W. explained defendant put his hands on and stuck his private in A.W.’s butt. He testified defendant did it every time he had a chance and stated the abuse occurred in defendant’s bedroom. Defendant testified at trial and maintained his innocence, denying that he ever touched A.W.
 

 |
 
 ¿ASSIGNMENT OF ERROR NUMBER ONE
 

 Defendant argues the evidence was insufficient to support his conviction for aggravated rape.
 
 [3]
 
 He maintains the victim’s testimony was filled with internal and external contradictions and thus was not credible. Specifically, he points out that the victim was known to lie, the victim denied the allegations when confronted by his father, and the victim’s claim that his younger brother was also abused by defendant was contradicted by the evidence. Defendant also contends AW.’s mother’s testimony was not credible. Defendant further claims the fact he had genital warts did not establish his guilt beyond a reasonable doubt.
 

 The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
 

 
 *484
 
 Defendant was convicted of aggravated rape in violation of LSA-R.S. 14:42, which provides in pertinent part:
 

 A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
 

 (4) When the victim is under the age of thirteen years.
 
 [4]
 
 Lack of knowledge of the victim’s age shall not be a defense.
 

 |fiRape is defined by LSA-R.S. 14:41(A) as “the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent.” Any sexual penetration, however slight, is sufficient to complete the crime and emission is not necessary. LSA-R.S. 14:41 (B).
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. In the case of sexual offenses, the victim’s testimony alone can be sufficient to establish the elements of a sexual offense, even if the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense.
 
 State v. Gaddis,
 
 07-395, pp. 7-8 (La.App. 5 Cir. 11/13/07), 973 So.2d 21, 25,
 
 writ denied,
 
 08-156 (La.10/10/08), 993 So.2d 1277.
 

 The trier of fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness.
 
 State v. Singleton,
 
 05-622, p. 7 (La.App. 5 Cir. 1/31/06), 922 So.2d 647, 651. It is not the function of the appellate court to assess the credibility determinations of the trier of fact or to reweigh the evidence.
 
 Id.
 

 Defendant argues that the victim’s testimony was not credible because it was full of contradictions. He further contends evidence that he had genital warts was merely suggestive of contact between him and the victim and did not prove his guilt beyond a reasonable doubt.
 

 In
 
 State v. Turner,
 
 05-75, pp. 11-13 (La.App. 5 Cir. 5/31/05), 904 So.2d 816, 822-23,
 
 writ denied,
 
 05-2591 (La.5/26/06), 930 So.2d 20, the defendant likewise argued the evidence was insufficient because the victim’s testimony was unbelievable. This Court noted that from the date of the incident the victim continuously maintained the defendant raped her and consistently described the |7details of the incident when she told her mother right after the incident, the police officers, the doctors, and in her taped statement two weeks after the incident. This Court found the jury made a credibility judgment by believing the victim’s version of events over the defendant’s version and concluded the State proved the essential elements of the crime beyond a reasonable doubt.
 

 Also, in
 
 State v. Singleton, supra
 
 at 5-7, 922 So.2d at 650-51, the defendant challenged his conviction for aggravated rape on the basis the only evidence was the victim’s unbelievable testimony. This Court admitted there were some inconsistencies regarding when the victim told her mother about the incident, but concluded that the victim consistently described the
 
 *485
 
 details of the incident through her statements, interviews, and her testimony. This Court concluded the trier of fact made a credibility determination, which is not to be reassessed on appeal, and that the evidence proved the essential elements of aggravated rape beyond a reasonable doubt.
 
 Id.
 
 at 7, 922 So.2d at 651.
 

 In
 
 State v. Shank,
 
 05-421, p. 5 (La.App. 5 Cir. 2/14/06), 924 So.2d 316, 320,
 
 writ denied,
 
 06-1176 (La.11/17/06), 942 So.2d 531, the defendant challenged his conviction for aggravated rape on the basis the medical evidence was inconclusive and the testimony was unreliable. The physical evidence showed the five-year-old victim had a small laceration to her posterior forchette. The doctor testified such a laceration was consistent with penile/vaginal contact but admitted the laceration was non-specific for sexual abuse because other causes can result in such a laceration. The victim told the examining doctor that the defendant only touched her with his hand as opposed to his penis, but the doctor explained it was not unusual for a child not to give full disclosure.
 

 This Court concluded that the jury found the victim and other State witnesses to be credible, rather than the defendant, which was supported by the j srecord. As such, this Court determined a rational trier of fact could have found, beyond a reasonable doubt, sufficient evidence to support defendant’s conviction.
 

 Further, in
 
 State v. Gaddis, supra
 
 at 11-12, 973 So.2d at 27-28, the defendant argued that the victims’ testimony should not have been believed because of inconsistencies. This Court acknowledged there were some differences in what one of the victims said during her CAC interview and her trial testimony. Citing
 
 State v. Simmons,
 
 03-20, p. 14 (La.App. 5 Cir. 4/29/03), 845 So.2d 1249, 1258, this Court noted that the discrepancies were not necessarily indicative of untruthfulness or incompetence.
 
 [5]
 

 State v. Gaddis, supra
 
 at 11, 973 So.2d at 27, n. 14. This Court concluded that despite some slight inconsistencies regarding some of the details, both victims described numerous events that were substantially the same. This Court found the jury’s decision to believe the victims’ account of the events over the defendant’s testimony was rational and that the State proved the essential elements of aggravated rape beyond a reasonable doubt.
 

 In the present case, defendant claims the victim’s testimony was unreliable because the victim was known to lie, his testimony was inconsistent because he initially told his father that he was sexually abused by the defendant but later denied anything happened, and his testimony about defendant abusing his little brother was contradicted.
 

 A.W., who turned eight years old shortly after disclosing the incident to his mother, admitted at trial that he has told a lie in the past when he did not want to get into trouble or did not want to hurt anyone. He stated he knew the importance of telling the truth during his testimony. Both his parents admitted they did not | nbelieve A.W. when he first told them about the abuse and both admitted A.W. has lied in the past. However, A.W.’s father testified A.W. has never lied about anything serious
 
 *486
 
 and his mother stated A.W. would not lie about this. Further, A.W. testified everything he had said during trial had been the truth.
 

 During the testimony of A.W.’s father, K.W., it was revealed that, at one point, A.W. denied defendant touched him. K.W. explained that after A.W. told him that defendant played with his butt, he confronted defendant, who denied the allegations. Thereafter, in defendant’s presence, K.W. confronted A.W., who denied defendant touched him. When asked if A.W. changed his story, K.W. replied A.W. was probably scared or intimidated. K.W. explained that A.W. never denied the incident while outside of defendant’s presence.
 

 Defendant further contends A.W.’s testimony is unreliable because his testimony that defendant touched his little brother, C.W., was contradicted by the evidence. The State stipulated that C.W. never made any disclosure of abuse to the CAC or anyone in law enforcement. On cross-examination, Dr. Wetsman testified that A.W. stated defendant touched his younger brother, C.W. Dr. Wetsman stated she talked to C.W., who was three years old at the time, and C.W. denied anyone ever touched him where they were not supposed to. Dr. Wetsman explained that although some three-year-olds open up, many three-year-olds are distracted and do not give any information. Also, Joann Verrett with the CAC testified she interviewed C.W. While Ms. Verrett did not recall whether C.W. made any disclosure, the videotaped interview of C.W. revealed no disclosure.
 

 Despite the lack of corroboration of that portion of A.W.’s testimony relating to his younger brother, the record shows A.W. consistently maintained defendant placed his private part in his behind from when he first told his mother, |inhis father, the police, the CAC interviewer, and the examining physician, through his trial testimony.
 

 Additionally, contraiy to defendant’s assertion, the medical evidence supports A.W.’s account that defendant put his penis in AW.’s anus. During the physical examination at Children’s Hospital, it was discovered A.W. had a genital wart on his anus. It was later discovered that defendant had genital warts on his penis.
 
 [6]
 
 Defendant challenges the value of this evidence and maintains it does not prove beyond a reasonable doubt that he raped A.W.
 

 The State presented the testimony of several doctors. All the doctors testified that genital warts are caused by the human papilloma virus, which can be a sexually transmitted disease. While a few of the doctors explained that it was possible for a child to contract genital warts from his mother through a vaginal birth, none believed it was the case in AW.’s situation.
 
 [7]
 

 
 *487
 
 In particular, Dr. Wetsman explained that infants who contract genital warts during birth manifest the warts by the time they are two years old. Moreover, she testified that warts transmitted this way usually manifest in the child’s mouth or respiratory tract. Dr. Wetsman reviewed A.W.’s pediatric records, which contained no indication A.W. was born with warts. Dr. Wetsman testified that, based on the history given by A.W. that defendant put his private part in AW.’s backside, and the first appearance of genital warts at age eight, A.W.’s genital warts were consistent with sexual abuse.
 

 |nDr. Russell Steele, an expert in pediatric infectious diseases, corroborated Dr. Wetsman’s testimony regarding the transmission of genital warts in a child. He testified that in his experience all of the children with genital warts he examined had been sexually abused. He explained that the primary cause of genital warts found on a child’s anus is sexual transmission consistent with penile/anal contact. Although Dr. Steele did not examine A.W., he reviewed A.W.’s records and agreed with Dr. Wetsman that there was no indication that A.W. was born with genital warts.
 

 After considering the evidence presented, the jury obviously made a credibility determination and believed the victim. Moreover, A.W.’s testimony was corroborated by medical evidence. As stated above, it is not the function of the appellate court to assess the credibility determinations of the trier of fact or to reweigh the evidence.
 
 State v. Singleton, supra
 
 at 7, 922 So.2d at 651. A review of the record reflects the jury’s decision to believe the victim over the defendant was rational. Thus, viewing the evidence in the light most favorable to the prosecution, we conclude that the State proved the essential elements of aggravated rape beyond a reasonable doubt. This assignment of error has no merit.
 

 ASSIGNMENT OF ERROR NUMBER TWO
 

 Defendant argues the trial court committed reversible error when it arbitrarily restricted his closing argument to 45 minutes. While he acknowledges a trial judge has great latitude in controlling the duration of closing arguments, defendant contends counsel must be given sufficient time to fully and completely present his argument to the jury. He maintains 45 minutes was insufficient time to address the real and complex issues presented by the 12 witnesses who testified at |i2trial. Defendant alleges the arbitrary time limit on closing argument violated his right to a full and fair trial.
 

 After defendant rested his case, an off-record discussion was had and a recess taken. When trial resumed, defense counsel noted for the record that he did not think he had sufficient time to prepare for closing argument in the amount of time the court was giving. He explained he had two legal pads worth of notes. The trial judge commented that defense counsel was a good lawyer and felt he could prepare in the time given. Defense counsel noted his objection for the record and also noted his objection to the 45-minute time constraint. Thereafter, both sides gave their closing arguments. There is no indication in the record of the actual duration of each party’s closing arguments. The transcript of the State’s closing argument is 23 pages, 16 of which consist of rebuttal argument, and the defendant’s closing argument is approximately 27 pages.
 

 All matters pertaining to the conduct of the trial are within the sound discretion of the trial judge. La. Const. Art. 5, § 1; LSA-C.Cr.P. art. 17;
 
 State v. Soler,
 
 93-1042, p. 22 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1081,
 
 writ denied,
 
 94-1361
 
 *488
 
 (La.11/4/94), 644 So.2d 1055. A trial judge has “the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done.” LSA-C.Cr.P. art. 17. As such, the trial judge has great latitude in controlling the duration and limiting the scope of closing arguments.
 
 State v. Farhood,
 
 02-490, pp. 28-29 (LaApp. 5 Cir. 3/25/03), 844 So.2d 217, 235.
 

 Defendant relies on
 
 State v. Washington,
 
 614 So.2d 711 (La.1993), to support his position that the time limit on his closing argument warrants reversal. In
 
 Washington,
 
 the Louisiana Supreme Court found that the trial court’s limitation of closing arguments to 15 minutes demonstrated an abuse of discretion that | ^warranted reversal of the defendant’s conviction.
 
 Id.
 
 at 713-14. The Supreme Court explained that the 15-minute limit “overshadowed and dominated the arguments of both state and defense without any apparent necessity in the record.”
 
 Id.
 
 The Supreme Court noted that the trial judge limited closing arguments “not to ease any burden already imposed on the jurors but out of fear that ‘any time longer than 15 minutes would have allowed nothing but repetition, waste of this jury and this court’s time, and would have resulted in an appeal to passion, prejudice and sympathy ...’”
 
 Id.
 
 at 713. The Supreme Court explained that the defense of the case, which involved three controlled drug buys, was not immediately obvious. It noted that defense counsel was forced to hastily close at the heart of arguing his defense and before he was able to address the state’s evidence regarding the third drug buy.
 
 Id.
 

 The present case is distinguishable from
 
 Washington.
 
 First, defendant was not limited to 15 minutes but rather was given 45 minutes to present his closing argument. Second, a review of defendant’s closing argument shows that he was adequately able to address the testimony of all witnesses who testified and to fully argue his defense that the State witnesses were not credible and the presence of genital warts on defendant did not prove beyond a reasonable doubt that defendant was guilty.
 

 In
 
 State v. Farhood, supra
 
 at 29, 844 So.2d at 235-36, this Court determined that 40 minutes for each side to present closing arguments after a three-day trial was reasonable and did not constitute an abuse of the trial judge’s discretion. Also, in
 
 State v. Galloway,
 
 551 So.2d 701, 703 (LaApp. 1 Cir.1989), the First Circuit found a 10-minute limit for closing arguments was not an abuse of the trial court’s discretion in light of the fact the defendant had not “set forth a particular way in which he was prejudiced by the court’s ruling or a specific argument which he was | Mforced to omit.”
 
 Id.
 
 And, in
 
 State v. Carney,
 
 476 So.2d 364, 371 (La.App. 4 Cir.1985), the Fourth Circuit found defendant suffered no prejudice in the trial court’s one-hour limit on closing arguments. The court noted defendant failed to assert specific prejudice resulting from the time limitation.
 

 In his supplemental brief, to bolster this argument, defendant specifically points to that portion of his closing argument where the trial court interrupted his argument to tell him to “wind it up.” He argues it is impossible to accurately measure the impact on his right to present a defense caused by the application of an arbitrary time limit on his closing argument. Defendant again cites
 
 State v. Washington,
 
 614 So.2d 711 (La.1993), to support his contention that the trial court’s time limitation on closing argument was unreasonable and warrants reversal.
 

 
 *489
 
 The record shows that at the time the trial judge instructed defense counsel to “wind up” his closing argument, defense counsel was becoming repetitious in his arguments. Defense counsel even admitted to the jury during his closing argument that he has “been accused of being long winded in the past” and apologized to the jury if the assessment applied in the present case.
 

 In the present case, defendant fails to assert specific prejudice or a specific argument he was forced to omit because of the 45-minute time limit. Twelve witnesses were presented at trial, ten for the State and two for the defense. During closing arguments, defense counsel specifically discussed each witness. The arguments he made during closing arguments are the same arguments he urges on appeal regarding the sufficiency of the evidence. Thus, it does not appear defendant was prejudiced by the time limitation, and the trial court did not abuse its discretion in limiting the duration of closing arguments. |
 
 ASSIGNMENT OF ERROR NUMBER
 
 THREE
 
 [8]
 

 Defendant argues that the trial court erred in denying his motion for a mistrial after an improper remark was made by the prosecutor during his rebuttal closing argument. Defendant contends the prosecutor’s remark, “[wjell, thank goodness he is no longer baby-sitting because [A.W.] might be dead by now,” warranted a mistrial. He asserts the comment was outside the evidence presented and was highly prejudicial because it suggested that defendant “was likely to have committed first degree murder of a child had he not been arrested.” Defendant maintains the remark was evidence of an uncharged crime, namely a plot to murder the child, and, therefore, a mistrial was mandated under LSA-C.Cr.P. art. 770.
 

 LSA-C.Cr.P. art. 774 requires that closing arguments at trial be confined “to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.” The State’s rebuttal should be confined to answering the defendant’s argument, but prosecutors are generally allowed considerable latitude when making closing arguments.
 
 State v. Vincent,
 
 07-239, p. 14 (La.App. 5 Cir. 12/27/07), 978 So.2d 967, 975-76.
 

 A conviction will not be reversed due to improper remarks during closing arguments unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict.
 
 State v. Draughn,
 
 05-1825, p. 44 (La.1/17/07), 950 So.2d 583, 614,
 
 cert. denied,
 
 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (La.2007), and
 
 State v. Vincent, supra.
 
 In making its determination, the appellate court should give credit to the good sense and fair-mindedness of the jury that has seen the evidence and heard the arguments, and has been instructed that the arguments of counsel are not evidence.
 
 State v. Robertson,
 
 08-297, p. 13 660,
 
 [9]
 

 citing State v. Jackson,
 
 04-293, pp. 5-6 (La.App. 5 Cir. 7/27/04), 880 So.2d 69, 73,
 
 writ denied,
 
 05-232 (La.5/6/05), 901 So.2d 1094. | |fl(La.App. 5 Cir. 10/28/08), 995 So.2d 650,
 

 LSA-C.Cr.P. arts. 770 and 771 govern improper comments made during closing arguments and authorize the trial court to correct a prosecutor’s prejudicial remarks by ordering a mistrial or admonishing the
 
 *490
 
 jury, at the defendant’s request.
 
 Id.
 
 LSA-C.Cr.P. art. 770(2) mandates a mistrial,
 
 [10]
 
 upon motion of a defendant, when a remark or comment is made by the district attorney within the hearing of the jury during the trial or in argument and refers directly or indirectly to “[ajnother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.” LSA-C.Cr.P. art. 771 provides, in pertinent part:
 

 In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
 

 (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770;
 

 [[Image here]]
 

 In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
 

 A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial.
 
 State v.
 
 17
 
 Lagarde,
 
 07-123, pp. 10-11 (La.App. 5 Cir. 5/29/07), 960 So.2d 1105, 1113-14,
 
 mit denied,
 
 07-1650 (La.5/9/08), 980 So.2d 684. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed absent an abuse of discretion.
 
 Id.
 
 at 11, 960 So.2d at 1114.
 

 During his closing argument, defense counsel argued defendant was very cooperative with the investigation and the police. He points out that defendant voluntarily gave a statement and voluntarily submitted to two physical examinations. On rebuttal, the prosecutor responded by stating:
 

 Of course he is going to talk to the detective. That’s — [defense counsel] wants to make him out to be some sort of hero because he cooperated with the police. He went down and talked to the detectives. Of course he did, because he thought he was going to get away with it. He thought, well, maybe if I blame everybody else, it will take the light off of me and they won’t come after me because they know I love this kid. Of course he- — -he said he loves him to death. Well, thank goodness he is no longer baby-sitting because [A.W.] might be dead by now.
 

 Defense counsel immediately objected and moved for a mistrial. Without any comment, the trial court overruled the objection and instructed the prosecutor to “go ahead” with his argument.
 

 Contrary to defendant’s assertion, it does not appear the prosecutor’s remark was a reference to an uncharged crime. Comments alleged to be improper must be viewed in light of the context in which they ai’e made.
 
 State v. Brown, 03-1616,
 
 p. 16 (La.App. 4 Cir. 3/31/04), 871 So.2d 1240, 1251,
 
 writ denied,
 
 04-1285 (La.10/15/04), 883 So.2d 1044,
 
 citing State v. Webb,
 
 419 So.2d 436, 440 (La.1982). To
 
 *491
 
 trigger a mandatory mistrial under LSA-C.Cr.P. art. 770(2), the remark must “un-mistakenly” point to evidence of another crime.
 
 State v. Brown, supra.
 

 Taken in context, the comment in the present case is most fairly construed to be a sarcastic remark on defendant’s testimony as opposed to a reference to an 18uncharged crime. Specifically, on direct examination, defendant was asked how he felt about the victim and his little brother. Defendant responded by stating:
 

 I loved them to death. I mean, we hung out, you know what I’m saying? We— you know — we had, you know, toys for them at their parents’ house and our house. We kept them in the corner by the table, you know what I’m saying? We have a variety of toys, you know what I’m saying? We went to the movies. We went to McDonald’s a lot because that’s their favorite thing to do. It was directly across the street from our house, from our apartment. So they loved that.
 

 Thus, we find that the prosecutor’s comment does not fall within the scope of LSA-C.Cr.P. art. 770.
 

 The prosecutor’s remark during rebuttal was arguably improper and seemingly falls within the ambit of LSA-C.Cr.P. art. 771. As such, an admonition was likely in order but defense counsel did not request it. In any event, as noted above, a conviction will not be reversed due to improper remarks during closing argument unless the remarks influenced the jury and contributed to the guilty verdict.
 
 State v. Vincent, supra.
 

 Although the prosecutor’s remark was arguably improper, it was not of such a serious nature to warrant a mistrial. There is no indication that the prosecutor’s remark so inflamed the jury that it influenced the jury’s verdict. The record shows the jury was instructed that they were only to consider the evidence presented in reaching their verdict. They were further instructed that the arguments of counsel were not evidence. As previously stated, much credit is accorded to the good sense and fair-mindedness of the jurors who have seen the evidence and heard the arguments, and have been instructed by the trial judge that arguments of counsel are not evidence.
 
 State v. Robertson, supra.
 
 Additionally, there was abundant evidence of defendant’s guilt. The victim’s testimony of the aggravated rape was | ^corroborated by physical evidence. Therefore, the trial court did not err in denying defendant’s motion for a mistrial.
 

 ERROR PATENT DISCUSSION
 

 Defendant requests an error patent review. Regardless of whether defendant makes such a request, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (LaApp. 5 Cir.1990). The following matters were found on review.
 

 The record does not reflect that defendant was notified of the sex offender registration requirements. Defendant’s conviction for aggravated rape is defined as a sex offense by LSA-R.S. 15:541(14.1). This Court has not made a distinction between those defendants with life sentences and those who have received less than life sentences for purposes of the required written notice of LSA-R.S. 15:543.
 
 [11]
 
 Ac
 
 *492
 
 cordingly, the case is remanded and the trial court is instructed to notify defendant of both the general sex offender registration requirements and the child predator registration provisions, and to furnish the record with proof of such notice to defendant.
 

 Also, it is noted that the record reflects the trial court signed an order granting defendant’s motion for new trial. However, the transcript of the hearing on the motion for new trial shows the trial court denied the motion. Defendant does not note this discrepancy on appeal.
 

 A motion for new trial must be in writing and must be tried contradictorily. LSA-C.Cr.P. art. 852. The written motion in the record does not contain a file LnStamp date; however, the trial judge signed the attached “Order for a New Trial” setting the new trial for June 6, 2008. It appears defense counsel presented his written motion in open court after stating he wished to file it and the trial court assumed the order attached to the motion was for a “show cause” hearing. The record clearly shows the motion for new trial was heard and denied. As such, the signing of the order granting the motion for new trial was inadvertent and constitutes a ministerial error. The trial court is hereby ordered to correct the ministerial error to ensure an accurate record.
 

 Finally, although the commitment indicates defendant was sentenced to life imprisonment at hard labor, the transcript shows the trial judge failed to specify the sentence was to be served at “hard labor.” If a discrepancy exists between the commitment and the transcript, the transcript prevails.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983).
 

 LSA-C.Cr.P. art. 879 requires a court to impose a determinate sentence. If the applicable sentencing statute allows discretion, the failure to indicate whether the sentence is to be served at “hard labor” is an impermissible indeterminate sentence. State
 
 v. Norman,
 
 05-794, p. 8 (La.App. 5 Cir. 3/14/06), 926 So.2d 657, 661,
 
 writ denied,
 
 06-1366 (La.1/12/07), 948 So.2d 145. Defendant was sentenced under LSA-R.S. 14:42(D), which mandates a life sentence at hard labor for an aggravated rape conviction and does not allow any trial court discretion. Because defendant received a mandatory sentence under LSA-R.S. 14:42, the sentence is determinate and the trial judge’s failure to state the sentence was at hard labor is harmless error.
 
 See Id.
 
 Therefore, no corrective action on this issue is required.
 

 Accordingly, the defendant’s conviction is affirmed.
 

 AFFIRMED; REMANDED WITH INSTRUCTIONS.
 

 [1]
 

 . Initials are used under the authority of LSA-R.S. 46:1844(W)(3), which allows the Court to identify a
 
 crime
 
 victim who is a minor or a victim of a sex offense by using his or her initials.
 

 [2]
 

 . Dr. Dietrich testified that he was not an expert in sexually transmitted diseases or infectious diseases.
 

 [3]
 

 . The question of sufficiency of evidence is properly raised in the trial court by a motion for post verdict judgment of acquittal. LSA-C.Cr.P. art. 821;
 
 State v. Hooker,
 
 05-251, p. 13 (La.App. 5 Cir. 1/17/06), 921 So.2d 1066, 1074. Although defendant filed a motion for new trial, he did not file a motion for post-verdict judgment of acquittal under LSA-C.Cr.P. art. 821. Procedurally, there is a distinction between the two motions. Nonetheless, the failure to file a post-verdict judgment of acquittal does not preclude appellate review of the sufficiency of the evidence.
 
 State
 
 v.
 
 Washington,
 
 421 So.2d 887, 889 (La.1982);
 
 State v. Robinson,
 
 04-964, p. 4 (La.App. 5 Cir. 2/15/05), 896 So.2d 1115, 1120, n. 3.
 

 [4]
 

 . The indictment alleges defendant committed aggravated rape between 1/1/03 and 1/31/05. Prior to August 15, 2003, LSA-R.S. 14:42(A)(4) provided, ''[w]hen the victim is under the age of twelve years.” The victim was between the ages of four and seven when the offense occurred. Therefore, the change in the law in 2003 is inconsequential in the present case.
 

 [5]
 

 . In
 
 Simmons, supra,
 
 this Court recognized that memory lapse and alleged inconsistencies may have resulted from the child-victim's tender age of five years on the date of the incident, the traumatic nature of the experience, exposure to unfamiliar surroundings, or the method of interrogation. In
 
 Simmons,
 
 this Court noted that despite some minor inconsistencies in the details surrounding the attack, the victim never wavered in her statement to the police, to her mother, and in her CAC interview, that the defendant put his "thing” in her mouth and "down there.”
 

 [6]
 

 . Although the first examination of defendant did not reveal genital warts, the evidence shows that clinical evidence of genital warts is not needed to transmit the warts to another person. More specifically, there was testimony that there are times when a person is infected with HPV but has no visible warts. A person with no visible symptoms can pass HPV along to another person whose symptoms can become visible.
 

 [7]
 

 . There was evidence that A.W.'s mother had a condyloma, a type of genital wart, on her cervix in 2004. Of note, defendant challenges the credibility of A.W.'s mother. Specifically, he claims she was not credible because she told the police she delivered all three of her children by caesarean section (c-section) but the evidence shows her children were born vaginally. Detective Guillot testified that he understood A.W.'s mother had c-seclions with each of her three children but admitted there was a possible misinterpretation. The record clearly shows A.W.'s mother delivered all her children vaginally.
 

 [8]
 

 . Defendant refers to this assignment of error as number four in his supplemental brief.
 

 [9]
 

 . A writ, 08-KH-2962, was filed with the Louisiana Supreme Court on December 18, 2008. As of the date of this opinion, the Supreme Court had yet to rule.
 

 [10]
 

 . Even though LSA-C.Cr.P. art. 770(2) is couched in mandatory terms, the admission of other crimes evidence is subject to a harmless error analysis.
 
 Stale v. Johnson,
 
 94-1379, pp. 16-17 (La.11/27/95), 664 So.2d 94, 101-102.
 

 [11]
 

 .
 
 See State v. Simmons,
 
 03-20, p. 22 (La. App. 5 Cir. 4/29/03), 845 So.2d 1249, 1263;
 
 State v. Dickerson,
 
 01-1287, p. 16 (La.App. 5 Cir. 6/26/02), 822 So.2d 849, 859,
 
 writ denied,
 
 02-2108 (La.2/21/03), 837 So.2d 627;
 
 State v. Wallace,
 
 00-1745, p. 15 (La.App. 5 Cir. 5/16/01), 788 So.2d 578, 588,
 
 writ denied,
 
 01-1849 (La.5/24/02), 816 So.2d 297.