CLARENCE E. McMANUS, Judge.
| ^¿Defendant, Richard Foster, was charged by bill of information with possession of a firearm by a convicted felon in violation of LSA-R.S. 14:95.1 (Count 1); possession with intent to distribute marijuana in violation of LSA-R.S. 40:966(A) (Count 2); and possession of cocaine in excess of 200 to 399 grams, in violation of LSA-R.S. 40:967(F) (Count 3). Prior to trial, Count 1 was severed from Counts 2 and 3.
Defendant’s first trial ended in a mistrial. Subsequently, a second jury was selected and Defendant again proceeded to trial on Counts 2 and 3. The jury found Defendant guilty of the lesser included verdicts of possession of marijuana and possession of cocaine.
After the denial of Defendant’s motion for new trial, sentencing delays were waived, and the trial court sentenced Defendant to six months in Parish Prison on Count 2 and five years in the Department of Corrections on Count 3, to be served consecutively with Count 2. Thereafter, pursuant to a multiple offender bill of Isinformation, defendant pled guilty as a third felony offender. Pursuant to the plea agreement, the trial court vacated the five year sentence on Count 3, and re-sentenced Defendant to ten years in the Department of Corrections without the benefit of probation or suspension of sentence, with credit for time served, to run concurrently with all other sentences. At the same time, Defendant amended his plea on Count 1 to guilty, and was sentenced to ten years in the Department of Corrections without benefit of probation, parole or suspension of sentence, to run concurrently with the sentence imposed in Count 3. Defendant now appeals from his convictions on Counts 2 and 3.[1]
On January 18, 2008, Agents Chris Morris and Eric Dufrene of the Jefferson Parish Sheriffs Office, Narcotics Division, participated in a narcotics investigation at a residence located at 200 Priest Street in Avondale, Louisiana. The officers obtained a search warrant, and forcibly entered the residence after receiving no response at the front door. Once inside, Agent Morris encountered Defendant, dressed in boxer shorts and an undershirt, coming out of the master bedroom. Defendant put his hands up and said “Sir, sir, I’m right here.” The officers also found one of Defendant’s sons asleep in another bedroom.
Agent Morris detained Defendant with handcuffs and advised Defendant that he had a search warrant for the residence and was conducting an investigation pursuant to the warrant. Agent Morris advised Defendant of his rights, which Defendant acknowledged as understanding, and moved Defendant to the living room so that the officers could conduct a secondary search of the residence.
Once the officers confirmed that there was no one else inside the house, Agent Morris returned Defendant to the master bedroom to speak with him outside of the presence of his son. Agent Morris again advised Defendant that he had a | ¿narcotics search warrant for the residence. In response, Defendant advised Agent Morris that the narcotics the officers were looking for would be located in the closet, and pointed to the closet located in the master bedroom. Agent Morris then asked if there were any weapons in the residence, and Defendant indicated that there was a pistol in the top drawer of a dresser located in the master bedroom. Defendant also advised that there was marijuana located in one of the dressers in *736 the master bedroom. Agent Morris testified that Defendant advised officers that he wanted to cooperate with the investigation and that Defendant insisted that his sons had no involvement in the narcotics possession.
Pursuant to the information obtained from Defendant, the officers searched the master bedroom closet and found a Pyrex dish containing a large piece of crack cocaine. When Defendant asked Agent Morris to retrieve a pair of pants from the master bedroom so that he could get dressed, Agent Morris discovered a bag of powder cocaine in the left front pocket. At trial, Daniel Waguespack, a forensic scientist with the Jefferson Parish Sheriffs Office crime laboratory, testified that both the white powder and the larger pieces of white substance seized from the residence tested positive for cocaine, and that the total weight of the cocaine seized was 389.1 grams.
The officers also searched the dressers located in the master bedroom in response to information provided by Defendant. The officers found a pistol and two bags of marijuana in two separate dressers. Mr. Waguespack testified at trial that the two plastic bags seized from the residence tested positive for marijuana, and that the total weight of the marijuana was 43.1 grams. Mr. Waguespack also confirmed that an additional, smaller bag found on Defendant’s son, Richshawn Williams, contained 1.6 grams of marijuana.
1 ¿Pursuant to the search warrant, the officers also seized sandwich bags, a razor blade, scales, a check book and nine cell phones. Agent Morris testified that these types of items are inconsistent with personal drug use and that, based on his experience, the street value of the approximately 400 grams of cocaine seized could be estimated at $40,000.
After the officers completed their search of the residence and processed the scene, they brought Defendant to the detective bureau to complete the arrest paperwork. Agent Morris testified that Defendant said he would be willing to give an audiotaped statement indicating that the narcotics found in the residence were his, that his sons had nothing to do with the drugs, and that he would take sole responsibility. Agent Morris again advised Defendant of his rights, and Defendant said that he wanted to speak to Agent Morris without an attorney. When Agent Morris informed Defendant that he was being charged with possession of 400 grams of cocaine, Defendant became upset, and was adamant with Agent Morris that he had only 200 grams in his possession. As a result, Defendant ultimately refused to give a statement.
Though Agent Morris testified that Defendant repeatedly denied involvement by his sons, Richshawn Foster, one of Defendant’s sons, testified at trial that he lived in the residence located at 200 Priest Street, that the drugs seized from his bedroom belonged to him, and that Defendant didn’t have anything to do with the drugs seized from the residence. Richshawn Foster also testified that Defendant did not reside at 200 Priest Street at the time of his arrest, and that Defendant had simply slept there the night before the arrest because he was drunk and had gotten in an argument with his fiancée.
Defendant’s fiancée, Lakeidra Payne, also testified that although she and Defendant previously resided at 200 Priest Street, Defendant did not live in the | (¡house at the time of his arrest. When Defendant and Ms. Payne moved back to Defendant’s house in Marrero, Louisiana, in November 2007, Defendant’s children and Defendant’s brother, Reggie Foster, remained in the home on Priest Street. *737 Ms. Payne also testified that Defendant slept at the Priest Street residence the night before his arrest because he was intoxicated.
In his first allegation of error, defendant alleges that the trial court erred in giving an improper Allen[2] charge in its last instruction to the jury, and therefore he is entitled to remand for a new trial. The State responds that it is permissible for a trial judge to instruct a jury which is unable to reach a verdict, and that a determination of when such supplemental instructions shall be given is in the discretion of the trial court. The State further contends that such instructions are only improper under Allen when the charge emphasizes that the jury has a duty to reach a verdict, implying that the trial judge will not accept a mistrial, and when the duty to reach a verdict is coupled with an admonition by the trial judge that the minority should rethink their position, which instruction was not given in this case.
The Allen charge stems from the United State Supreme Court’s decision in Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). State v. Caston, 561 So.2d 941, 942 (La.App. 2 Cir. 5/9/90). In Allen, the court approved of a charge designed to break a jury deadlock and achieve jury unanimity. Caston, 561 So.2d at 942; State v. Eugene, 08-1128, p. 9 (La.App. 5 Cir. 1/27/04), 866 So.2d 985, 991, writ denied, 04-0515 (La.1/14/05), 889 So.2d 263 (citing State v. Collor, 99-0175, p. 13 (La.App. 4 Cir. 4/26/00), 762 So.2d 96, 104, writ denied, 00-1487 (La.3/9/01), 786 So.2d 116). The main focus of the original Allen charge was that the jury minority, regardless of whether they were for conviction or |7acquittal, should reconsider the reasonableness of their opinion, because it was not shared by a majority of the jury. Caston, 561 So.2d at 942.
The Louisiana Supreme Court has banned the use of the Allen charge, and subsequent modifications of it. Collor, 99-0175 at 13, 762 So.2d at 104 (citing State v. Nicholson, 315 So.2d 639 (La.1975)). While the Supreme Court recognized the authority of a trial court to give further instructions to a jury unable to agree upon a verdict, it found the Allen charge problematic for two reasons. Id. First, the charge emphasized that the jury had a duty to reach a verdict, implying that the trial judge would not accept a mistrial. Id. Second, when the duty to reach a verdict is coupled with an admonition by the trial judge that those in the minority should rethink their position, there exists an almost overwhelming pressure to conform to the majority’s view. Id. (citing State v. Campbell, 606 So.2d 38, 40 (La.App. 4 Cir.1992)). Therefore, if a trial judge gives an Allen charge or any “coercive modification” of same, the trial court will have committed reversible error. Collor, 99-0175 at 13, 762 So.2d at 104 (citing Nicholson, supra).
There is no requirement that a judge declare a mistrial at the initial sign of trouble. State v. Anders, 06-589, p. 12 (La.App. 3 Cir. 9/27/06), 941 So.2d 93, 101 (citing State v. Lowenfield, 495 So.2d 1245 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986)). It is within the discretion of the trial court to urge jurors to come to an agreement. Anders, 06-589 at 12, 941 So.2d at 101 (quoting State v. Governor, 331 So.2d 443 (La. 1976)).
In the present case, the jurors retired to deliberate at 5:43 p.m. At 7:37 p.m., after approximately two hours of deliberations, the trial judge received a note from the *738 jury with the following question: “What happens if we can’t come to an agreement; 8/4 vote.” In response to the note, the jury was returned to the courtroom. The court informed the jury that it had not been deliberating long (less |sthan 2 hours) and it then reread part of the original jury charges. After the jury was escorted out of the courtroom, the trial judge noted: “I was afraid to go any further than that because, you know — once you put pressure on them, then we’re going to wind up doing it again. All right. We’ll see what happens.”
At 10:14 p.m., the trial judge received another note from the jury advising the court that the jury was deadlocked. At this time, the judge proposed that the jury be brought back to the courtroom to determine whether they needed more time, and the following colloquy ensued:
THE COURT:
All right. I have a note from the jury that says, We, the jury, are deadlocked.
So what I propose to do is bring them out just to ask them if more time will help, make sure that they’re discussing the case with their fellow jurors. I’m not going to give them an Allen charge. Just, you know, basically try to probe— tell them I don’t want to know where they are, what they’re thinking, what their vote is. But just probe a little bit and see if we can give them more time.
Any objection to doing that?
MR. AMSTUTZ:
None by the State.
MR. DESALVO:
Well, Judge, if they say no time— more time isn’t going to do them any good, then—
MR. AMSTUTZ:
I think they need to express that in open court.
THE COURT:
If they say that, I’m going to — like I said, I’m not going to force them, I’m not going to threaten them, or, you know, anything like that. But—
MR. DESALVO:
The other thing I’d like to note, Judge, is it’s I guess about 10:15 at night. They haven’t eaten or anything either.
THE COURT:
That — well, that’s not altogether correct. I mean, they had a big lunch. They’ve had leftovers, and they’ve had— then they have — then they have lots of chips and crackers and snacks and candy and soft drinks, and everything else, so — ■
JjMR. DESALVO:
Okay.
THE COURT:
But, I mean, I’m going to tell them— I’m going to tell — what I’m going to tell them is they’ve been deliberating for approximately four and a half hours. You know, we’ve had juries deliberate a lot longer than that, so — I mean, I don’t want to keep them in there if we’re, you know, wasting all of our time.
MR. AMSTUTZ:
If they come out and they say that, you know, We think we’re deadlocked, I think it’s certainly within the Court’s realm to ask them just to go back and try it one more time.
And then if they can’t do it, then that’s it. I think after all this time and effort by everybody that’s involved in the case—
THE COURT:
I agree with you, but, I mean — I agree with you, but I don’t want to tell them that because I think that’s putting pressure on them, you know, and we’ll be here again no matter what, so—
MR. AMSTUTZ:
*739 I mean, just ask them what — do you think it’ll help?
THE COURT:
All right. Let’s bring them in.
* ⅜ ⅝ * 5k ⅜
(THE JURY IS ESCORTED INTO THE COURTROOM AT THIS TIME)
$ * * * ⅜ *
THE COURT:
All right. I have your note that says, We, the jury, are deadlocked.
Ya’ll have been out four and a half hours roughly. We’ve had juries deliberate a lot longer than four and a half hours.
By the way — actually, I should say this first. Hopefully, I’ve adequately prepared y’all to getting what I said, Nobody said this was easy. It’s not a dif — it’s a dif — you’ll be making a tough decision. I told you that on the front-end. I hope everybody remembers it. It’s not an easy decision and what you’ve been called to do is not easy. You know, jury service is a tough thing.
Again, I don’t want to know — I don’t want to know y’all’s present vote or, you know, your vote or your present thinking. This says y’all are deadlocked. You’ve been out four and a half hours. I’ve had juries deliberate a lot longer than four and a half hours to reach a verdict.
I mean, if — if—y’all know better than I do. I’ve read to you-all the provisions about, you know, not being afraid to change your vote if — if—well, let me just read it.
Consult with one another. Consider each other’s views. | inDiscuss the case with the evidence — with the objective of reaching a just verdict. If you must— each of you must decide the case for yourself, but only after discussion and a partial consideration of the case with your fellow jurors. You’re not advocates for — you are not advocates for one side or the other. But don’t hesitate to reexamine your own views and to change your opinion if you are convinced you were wrong. But don’t surrender your honest belief as to the weight and effect of the evidence solely because of the opinion of your fellow jurors.
At this point, I guess I’m kind of looking for guidance from y’all. I mean, we have all the time in the world. If — I don’t want to waste y’all’s time. I don’t want to waste all of our time. If we’re going to — whatever your vote is now— and I don’t want to know what it is — but if it’s what it is and it’s not going to change, then let me know. But if there’s a possibility that we could get ten to do anything that’s, you know, on that piece of paper, you know, as charge, not guilty, or any of the responsive verdicts on each count, or even one count, if that’s a possibility, then we’ll take more time.
Is that a possibility? I’m seeing some people shaking their head yes. Okay. Let’s take some more time.
I mean, look, I know — I mean, just so y’all know, I told y’all last time, if you can’t reach a verdict, it’s a hung — it’s a hung jury. Okay? Which is — you know, which is fíne. But if y’all — if y’all can reach a verdict and more time will help, then — then let’s take some more time.
And for the record, I’m looking at the jury and I’m seeing a lot of heads going up and down indicating to me that some more time might help.
So we’ll send y’all back out and we’ll take some more time.
After the jury was escorted out of the courtroom to continue their deliberations, defense counsel objected to the instruc *740 tions given by the court. Specifically, defense counsel objected to the trial judge instructing the jury to try to reach a verdict on “even one count,” on the grounds that it “sent a message to the jury that it could at least get a verdict on one count.”[3] The jury subsequently returned lesser included verdicts on both charges.
As evidenced by the record, the trial judge’s charge regarding further deliberations did not touch upon the elements that the United States Supreme Court found problematic in Allen. See State v. Wilson, 01-0625 (La.App. 3 Cir. 12/28/01), 806 So.2d 854, unit denied, 02-0323 (La.9/13/02), 827 So.2d 1121 (holding that the charge given by the trial court did not rise to the level of an Allen charge or a modified Allen charge when the trial court did not imply to the jurors that it would not accept a mistrial or attempt to coerce the jury members holding the minority viewpoint to accept the majority position). First, the instruction did not imply that the trial judge would not accept a mistrial. In fact, as noted above, the trial judge advised the jury as follows: “[I]f you can’t reach a verdict, it’s a hung — it’s a hung jury. Okay? Which is — you know, which is fine.” Because the court expressly indicated its willingness to accept a hung jury, which would result in a mistrial, and because the decision to send the jury back for continued deliberations was predicated on advice solicited from the jurors, it appears unlikely that the jurors interpreted the judge’s request for “guidance” as to whether “more time would help” as an implication that the court would not accept a mistrial. See Eugene, 866 So.2d at 991 (“It is unlikely that the jurors interpreted the judge’s request that the jury spend a ‘little more time’ deliberating as an implication that the court would not accept a mistrial.”). Finally, the trial judge’s assertions that he didn’t want to waste the jurors’ time and that they should let him know if their position was unlikely to change with more time, support a conclusion that the jurors were aware that the court was prepared to declare a mistrial if necessary.
Second, the trial judge did not tell the jurors holding the minority view to rethink their positions in light of the majority’s stance in order to reach a verdict. Instead, the court reiterated that the jurors should not surrender them honest belief as to the weight and effect of the evidence solely because of the opinions of fellow jurors. The trial judge encouraged the jurors to consult with one another and consider each other’s views, and inquired whether the jurors’ felt there was some possibility of reaching a verdict if they were given more time. Upon receiving a positive response from the jurors, and after noting that the jury had only been | ^deliberating for four and a half hours, the trial judge decided to give the jurors additional time. See Collor, 99-0175 at 15, 762 So.2d at 105 (“In light of the fact that the jury members had deliberated only one hour when they advised the judge they were deadlocked, and considering the gravity of the offense, the trial judge did not abuse his discretion in requesting that the jury continue their deliberations for another half hour.”); Anders, 06-589 at 13, 941 So.2d at 101-02 (“The trial court’s comments merely indicate it felt it was much too soon in deliberations for the jury to conclude that it could not reach a verdict, as the jury deliberated for one hour and five minutes before informing the *741 court that it could not reach the required verdict.”).
The Louisiana Supreme Court has recognized that there will be times when a court may wish to give supplemental instructions after the jury has retired, and that the determination of when such supplemental instructions shall be given is in the discretion of the trial court. Nicholson, 315 So.2d at 643. However, in cases where the instructions given by the trial court constitute an Allen charge or a modified Allen charge, the reviewing court shall find reversible error. See State v. Dabney, 05-53, p. 11 (La.App. 5 Cir. 6/28/05), 908 So.2d 60, 67. The elements of an impermissible Allen charge are not present in the instant charge to the jury. Instead, the instructions referred to in the present case are akin to those given in Eugene, Collor and Anders, which were not considered improper under Allen. Thus, the trial judge did not abuse his discretion in requesting that the jury continue their deliberations after they had only deliberated for four and a half hours and they indicated that there was a possibility of reaching a verdict if given more time. This assignment of error lacks merit.
In his second allegation of error, defendant argues that he was denied his right to a fair trial when the prosecuting attorney made improper, inflammatory and | ^unprofessional statements during his closing argument. Specifically, Defendant contends that the State violated LSA-C.Cr.P. art. 774 by implying to the jury “that they must find Mr. Foster guilty if they thought drugs were bad.” Defendant contends that, although an admonition was given by the court, the prosecutor continued to imply that the jury needed to “send a message to people like [Defendant] that this is not going to be tolerated.”
The State responds that the language objected to by Defendant does not fall within the meaning of prejudicial language that would form the basis of a mistrial under LSA-C.Cr.P. art. 770. The State further contends that, even if the language fell within the scope of prejudice contemplated by LSA-C.Cr.P. art. 771, the proper remedy was obtained by Defendant when the court admonished the jury after defense counsel objected to the statement. Finally, the State asserts that a conviction should not be reversed due to improper remarks during closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict.
LSA-C.Cr.P. art. 774 requires that closing arguments at trial be confined “to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.” State v. Smallwood, 09-86, p. 15 (La.App. 5 Cir. 7/28/09), 20 So.3d 479, 489; State v. Robertson, 08-297, p. 12 (La.App. 5 Cir. 10/28/08), 995 So.2d 650, 659, writ denied, 08-2962 (La.10/9/09), 18 So.3d 1279. Closing arguments shall not appeal to prejudice. Robertson, 08-297 at 12, 995 So.2d at 659 (citing LSA-C.Cr.P. art. 774). A prosecutor has considerable latitude in making closing arguments. State v. Jackson, 04-293, p. 5 (La.App. 5 Cir. 7/27/04), 880 So.2d 69, 73, unit denied, 05-0232 (La.5/6/05), 901 So.2d 1094. However, prosecutors may not resort to personal experience or turn their arguments into a plebiscite on crime. Robertson, 11408 — 297 at 12-13, 995 So.2d at 659-60 (citing State v. Williams, 96-1023, p. 15 (La.1/21/98), 708 So.2d 703, 716, cert. denied, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998)).
 The trial judge has broad discretion in controlling the scope of closing arguments. Robertson, 08-297 at 13, 995 *742 So.2d at 660 (citing State v. Taylor, 07-93, p. 31 (La.App. 5 Cir. 11/27/07), 973 So.2d 83, 103, writ denied, 07-2454 (La.5/9/08), 980 So.2d 688). A conviction will not be reversed due to improper remarks during closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. Id. (citing Jackson, 04-293 at 5-6, 880 So.2d 69 at 73). In making its determination, the appellate court should give credit to the good sense and fair-mindedness of the jury that has seen the evidence and heard the argument, and has been instructed that the arguments of counsel are not evidence. Id.
LSA-C.Cr.P. arts. 770 and 771 govern improper comments made during closing arguments and authorize the trial court to correct a prosecutor’s prejudicial remarks by ordering a mistrial or admonishing the jury, at the defendant’s request. Smallwood,, 09-86 at 16, 20 So.3d at 489-90. LSA-C.Cr.P. art. 770 provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
LSA-C.Cr.P. art. 771 provides:
11fiIn the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. Smallwood,, 09-86 at 16-17, 20 So.3d at 490 (citing State v. Lagarde, 07-123, pp. 10-11 (La.App. 5 Cir. 5/29/07), 960 So.2d 1105, 1113-14, writ denied, 07-1650 (La.5/9/08), 980 So.2d 684). Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed absent an abuse of discretion. Id. In addition, assuming the prosecutor’s argument was improper, reversal is not required when such error was limited and did not show significant impact on the outcome of the case. State v. Huckabay, 00-1082, p. 29 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1110, writ denied, 02-0703 (La.11/1/02), 828 So.2d *743 564; State v. Francis, 95-194, pp. 12-14 (La.App. 5 Cir. 11/28/95), 665 So.2d 596, 604.
In the instant case, the prosecutor made the following remarks during his closing argument:
You know what? You’re the collective voice of the community. You’re the jurors. You’re representing the 116people of Jefferson Parish. And you saw the amount of dope in this case, cocaine and marijuana. You’ve heard the elements. You’ve heard the testimony. Everybody agreed that drugs are terrible. They cause a lot of problems. Everybody heard it.
Defendant objected and requested that the court admonish the jury, stating that “[t]hey need to deliberate based on the facts of this case, not about the emotions of drugs or how terrible they might be.” The trial judge instructed the jury not to be influenced by sympathy, passion, prejudice, or public opinion, and concerning the prosecutor’s comment stated that “But I think that — I don’t — I mean, this is argument of counsel. I think thus far it’s ok.”
Although arguably improper, the prosecutor’s comments in the present case do not appear to fall within the scope of LSA-C.Cr.P. art. 770, mandating a mistrial. The objectionable comment does not refer directly or indirectly to race, religion, color or national origin; another crime committed or alleged to have been committed by the defendant; the failure of the defendant to testify in his own defense; or the refusal of the judge to direct a verdict. LSA-C.Cr.P. art. 770. Instead, the prosecutor’s remarks more likely fall within the ambit of LSA-C.Cr.P. art. 771.
Pursuant to article 771, a trial judge is required to admonish the jury to disregard a comment made within the hearing of the jury that is irrelevant, immaterial or prejudicial to the defendant or the State when an admonishment is requested by the defendant or the State. State v. Smothers, 02-277, p. 15 (La.App. 5 Cir. 12/30/02), 836 So.2d 559, 569, writ denied, 03-0447 (La.10/10/03), 855 So.2d 329 (citing LSA-C.Cr.P. art. 771). The trial court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. Id. (citing LSA-C.Cr.P. art. 771).
|17We find that Defendant received an adequate remedy under LSA-C.Cr.P. art. 771. Following the remarks made by the prosecutor, defense counsel objected and requested that the jury be admonished. The court complied, instructing the jury not to be influenced by sympathy, passion, prejudice, or public opinion, and was satisfied that the admonition would be sufficient to assure Defendant a fair trial.
Moreover, although the prosecutor’s remark was arguably improper, it was not of such a serious nature to warrant a mistrial. There is no indication in the record that the prosecutor’s remark so inflamed the jury that it influenced the verdict. The record shows the jury was instructed that they must consider only evidence which was admitted during the trial, and that the arguments of counsel are not evidence. As noted above, much credit is accorded to the good sense and fair-mindedness of the jurors who have seen the evidence and heard the arguments, and have been instructed by the trial judge that arguments of counsel are not evidence. Smallwood, 09-86 at 18, 20 So.3d at 491. Additionally, there was ample evidence of Defendant’s guilt, which was corroborated by physical evidence. Finally, Defendant has not provided sufficient evidence to establish that the objectionable remarks influenced the jury or contributed to the verdict. We find that the court did not err in denying Defendant’s motion for mistrial. This assignment of error lacks merit.
*744 Defendant requests an error patent review. We have reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and note the following errors.
LSA-C.Cr.P. art. 930.8 provides that a defendant has two years from the date “the judgment of conviction and sentence has become final” within which to file an application for post-conviction relief. Subpart C of the article requires that the trial |, judge inform a defendant of the prescriptive period at the time of sentencing. The record does not show that the judge so instructed Defendant at the time of his original sentencing on October 16, 2008. However, the record shows that defendant was advised of the provisions of Article 930.8 when his enhanced sentence was imposed. We therefore find this issue moot because Defendant’s sentence was vacated in conjunction with the subsequent habitual offender proceedings and an advisal was given at the time Defendant was re-sentenced. State v. Hardan, 04-171, p. 5 (La.App. 5 Cir. 8/31/04), 882 So.2d 625, 628, fn. 2. However, in an abundance of caution, we inform the defendant in this opinion that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of LSA-C.Cr.P. art. 914 or 922. State v. Hill, 09-89, p. 7 (La.App. 5 Cir. 5/26/09), 15 So.3d 1042.
For the above discussed reasons, defendant’s convictions and sentences are affirmed.

AFFIRMED.

. As noted by both Defendant and the State, Count 1 is not subject to this appeal.

. Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

. Defendant again objected to the trial judge’s instruction in his motion for mistrial, which was denied by the court on October 16, 2008.